653 P.2d 703

STERLING BOAT COMPANY, INC., a California corporation, Plaintiff-Appellant,

v.

ARIZONA MARINE, INC., an Arizona corporation, Defendant-Appellee.

No. 1 CA–CIV 5369.

Court of Appeals of Arizona, Division 1, Department A.

Aug. 24, 1982.

Rehearing Denied Oct. 6, 1982.

Review Denied Nov. 9, 1982.

Carmichael, McClue & Powell, P.C. by J. Clayton Berger, Phoenix, for plaintiff-appellant.

Pavilack, Spack & Mulchay, P.C. by Lars O. Lagerman, Terry L. Rakow, Scottsdale, for defendant-appellee.

## OPINION

FROEB, Judge.

This is an action for conversion by a consignor against the successor in interest of a consignee for the proceeds resulting from the sale of a boat to a retail purchaser. Summary judgment was entered by the trial court rejecting the conversion claim. The judgment is reversed.

The undisputed facts are as follows: Sterling Boat Company, Inc. (Sterling Boat) is a California corporation engaged in the business of manufacturing pleasure boats. It makes occasional shipments of such boats to dealers in the state of Arizona. On April 10, 1979, Sterling Boat shipped one 18-foot "Maverick" boat and a Roadrunner trailer to Arizona Marine Center, a sole proprietorship owned by Richard Reed and Beverly Reed and operated for the retail sale of boats and related accessories.

The original owners of Arizona Marine Center were Alton and Pamela Burns. They sold the enterprise to the Reeds on November 30, 1977, but retained a security interest with an after-acquired property clause or floating lien in the assets, equipment and inventory, together with the proceeds therefrom of the ongoing business.

On June 22, 1979, Arizona Marine Center was purchased as a going business by Arizona Marine, Inc., an Arizona corporation, pursuant to a written sales contract.

On June 26, 1979, a representative of Sterling Boat, Brad Fisher, contacted the president of Arizona Marine, Inc., Lionel Lieberman, and told him that the boat and trailer were on consignment to Arizona Marine Center and that Sterling Boat still owned them.

On June 27, 1979, the boat and trailer were sold to a retail buyer by Arizona Marine, Inc., in the ordinary course of its business.

On July 6, 1979, a representative from Sterling Boat called on Lionel Lieberman for the purpose of collecting payment for the boat and trailer from the sales proceeds. Lieberman refused payment and denied that Sterling had any interest in the boat and trailer. Sterling Boat instituted this lawsuit on July 13, 1979, to collect the invoice price of the consigned goods based upon a theory of conversion.

On October 3, 1979, the Burnses foreclosed their security interest in the inventory and equipment of Arizona Marine, Inc. In addition to the inventory and equipment, Arizona Marine, Inc. turned over the proceeds from the sale of the boat and trailer to the Burnses.

Arizona Marine, Inc. moved for summary judgment, which was granted. After the motion was granted, but before final judgment was entered dismissing Sterling Boat's complaint, Sterling Boat filed a motion to reconsider the granting of Arizona Marine, Inc.'s motion for summary judgment. In addition, Sterling Boat filed a second motion, pursuant to rule 15 of the Arizona Rules of Civil Procedure, to amend the complaint to assert an alternative cause of action based on a theory of quasi contract. While these motions were pending, the court entered formal judgment granting the summary judgment. The court

then entered a minute entry denying both of the motions.

The argument of Sterling Boat is founded upon the initial consignment of the boat and trailer to the Reeds, doing business as Arizona Marine Center. Whether a consignment in fact existed was not an issue in the summary judgment proceedings and a consignment was assumed for the purpose of the motion. Sterling Boat concedes that it did not comply with the filing provisions of the Uniform Commercial Code in order to perfect a security interest in the boat and trailer.[1] It argues, and we agree, that this does not affect the outcome in this case as there is no dispute between competing creditors over priority of their interests. Sterling Boat proceeds with its argument that four days before the boat and trailer were sold, Arizona Marine, Inc. was given notice that the boat and trailer belonged to Sterling Boat since they had been placed with Arizona Marine Center under consignment; that the consignment continued after the business was taken over by Arizona Marine, Inc.; and that by reason of the sale, the resulting proceeds belonged specifically to Sterling Boat and should have been paid to it as demanded. Very simply, Sterling Boat argues that failure to pay over the proceeds was a conversion for which Arizona Marine, Inc. is liable.

Arizona Marine, Inc. argues, first, that an action for conversion will not lie against Arizona Marine, Inc. as the successor in interest to the Reeds, because the fiduciary underpinnings of the consignor/consignee relationship do not exist between Sterling Boat and Arizona Marine, Inc. It argues that if there is any relationship, it is one of debtor and creditor and as such no action for conversion will lie. For a second argu-

ment, Arizona Marine, Inc. states that the claim of Sterling Boat is inferior to the claim of the original sellers and secured creditors, Alton and Pamela Burns, by reason of the fact that Sterling Boat did not comply with the filing provisions of the Uniform Commercial Code. This argument is directed to the voluntary payment of the proceeds of the sale of the boat and trailer to the Burnses and is based upon the fact that on October 3, 1979, the Burnses foreclosed their security interest in the assets of the business. The argument continues that when Arizona Marine, Inc. received the proceeds from the sale and paid them over to the Burnses, they did so because of the "prior and superior" right of the Burnses to the proceeds, thereby lawfully terminating whatever claim to the proceeds Sterling Boat may have had.

We hold the arguments of Arizona Marine, Inc. lack merit and that Sterling Boat is entitled to a trial on the theory of conversion.

Since both parties rely heavily on language from the decision of this court in *Autoville, Inc. v. Friedman,* 20 Ariz.App. 89, 510 P.2d 400 (1973), we proceed to discuss it. In *Autoville,* Friedman had an arrangement with Autoville, Inc., whereby he would finance the purchase of used automobiles and Autoville, Inc. would sell them from its lot, remitting the proceeds to Friedman. After the business closed down, the funds from the sale of the cars were withdrawn by the owners of the corporation without remitting to Friedman either the wholesale cost or his service fee. Friedman brought suit in conversion. The court of appeals held that for all the transactions at issue but one, Friedman did not own or have a right to possession of the vehicles which were

---

1. Although it is not argued and is not material to the resolution of this appeal, it should be pointed out that the boat and trailer are treated differently under Arizona law with respect to both title and security interest. A boat does not have a certificate of title and a security interest must be established by filing under the Uniform Commercial Code. Ownership of a boat trailer, however, is evidenced by a certificate of title registered under the Arizona Motor Vehicle Registration Code, A.R.S. § 28–301, *et*

*seq.* A security interest, with some exceptions will not arise against a trailer having a certificate of title unless the lien appears on the certificate as required by the Motor Vehicle Registration Code. For a recent case discussing this, *see First National Bank of Arizona v. Carbajal,* 132 Ariz. 263, 645 P.2d 778 (1982). Although these differences between a boat and trailer could lead to an assortment of legal questions, the distinction is not relied upon in the appeal and we need not advert to it further.

sold and therefore an action for conversion would not lie to recover what was owing to him, his relationship to Autoville being merely one of debtor and creditor. The court found, however, as to one vehicle, a GMC truck, that Friedman did have ownership rights and held that the action for conversion of the proceeds resulting from its sale was proper.

■ The transaction in this case falls within the second situation discussed in Autoville because of the consignment arrangement between Sterling Boat and the Reeds. The GMC truck in *Autoville* was owned by Friedman outright and was the subject of a " 'factoring' agreement whereby Autoville was to sell Friedman's vehicle as Friedman's agent and remit to Friedman a specific sum . . . ." 20 Ariz.App. at 93, 510 P.2d at 404. While *Autoville* does not use the term "consignment," a "factor" is a "commercial agent, employed by a principal to sell merchandise consigned to him for that purpose, for and in behalf of the principal, but usually in his own name, being entrusted with the possession and control of the goods, and being remunerated by a commission, commonly called 'factorage'." *Black's Law Dictionary* (4th ed. 1968). *See also Neild v. District of Columbia,* 110 F.2d 246 (D.C.Cir.1940); *Hughes v. Young,* 17 Tenn.App. 24, 65 S.W.2d 858 (1932). The common ingredient in this case and the second situation in *Autoville* is the principle of consignment. We hold, in accordance with *Autoville,* that an action for conversion will lie.

A point of difference between this case and *Autoville* is that here the consigned property was transferred from the consignee to a successor in interest. Does conversion lie against the successor? Conversion results from conduct intended to affect property of another. Prosser, *Torts* § 15 p. 83 (4th ed. 1971). The intent required, however, is not necessarily a matter of conscious wrongdoing. *Id.* "It is rather an intent to exercise a dominion or control

over the goods which is in fact inconsistent with the plaintiff's rights." *Id.* "The gravamen of the tort is therefore the wrongful interference with another's ownership or right of possession." *Autoville, supra,* 20 Ariz.App. at 91, 510 P.2d at 402. We hold that conversion does lie against Arizona, Marine, Inc.

The tort of conversion in this case was complete when the money resulting from the retail sale of the boat and trailer was not paid to Sterling Boat upon demand but was instead retained by Arizona Marine, Inc. for its own purposes. No further tracing of the specific fund is necessary. Money resulting from the sale of consigned property can be the subject of an action for conversion. *See Autoville, supra.*

We turn next to the argument that Sterling Boat may not maintain the action because the proceeds of the sale were given by Arizona Marine, Inc. to the Burnses in partial satisfaction of its debt to them.

■ It is true, as argued by Arizona Marine, Inc., that in a contest over priority to the proceeds of the sale of the boat, Sterling Boat's interest is inferior to the security interest of the Burnses by virtue of A.R.S. § 44–3113.01(B).[2] That priority, however, is not a dispositive issue because Arizona Marine, Inc. was under no obligation to pay over to the Burnses the money resulting from the sale of the boat and trailer when Sterling Boat made its demand on July 6, 1979. Although the record supporting the summary judgment is incomplete as to the default of Arizona Marine, Inc. to the Burnses, the foreclosure of the Burnses' lien did not take place until October 3, 1979. We fail to see any legal reason based upon the Burnses' lien which justifies the refusal of Arizona Marine, Inc. to pay the proceeds to Sterling Boat on July 6, 1979. Neither the lien of the Burnses nor the failure of Sterling Boat to perfect its own security interest under the Uniform Commercial Code presents such a reason.

---

**2.** This statute provides that in the case of a consignment, where there has been no compliance with Section A of that statute, the consignor is "subordinate to a person who would have a perfected security interest in the goods if they were the property of the debtor."

The final issue raised by Sterling Boat involves the refusal of the trial court to allow Sterling Boat to amend its complaint against Arizona Marine, Inc. after the motion for summary judgment was decided. Since we reverse the judgment, this issue is now moot.

For the reasons set forth, the judgment is reversed and the case remanded for further proceedings. We point out, in conclusion, that the facts upon which this decision is reached are those developed within the corners of summary judgment and because their ultimate determination must await decision by the trier of fact, none are beyond dispute at trial.

OGG, P.J., and CORCORAN, J., concur.