746 P.2d 488

**FOCAL POINT, INC., an Arizona corporation, Plaintiff Counter-defendant-Appellant,**

v.

**U-HAUL CO. OF ARIZONA, INC., an Arizona corporation, Defendant Counter-plaintiff-Appellee.**

No. 1 CA–CIV 7664.

Court of Appeals of Arizona, Division 1, Department C.

Dec. 2, 1986.

Reconsideration Denied May 22, 1986.

Review Denied Dec. 2, 1987.

See also, 149 Ariz. 128, 717 P.2d 432.

Gregory E. Hinkel, Phoenix, for plaintiff counter-defendant-appellant.

Rex C. Nowlan, Asst. Gen. Counsel for U–Haul Intern., Phoenix, for defendant counter-plaintiff-appellee.

OPINION

JACOBSON, Judge.

The issue in this appeal is whether the obtaining of possession of a chattel through mistake and the exercise of control over that chattel to ascertain its true owner is sufficient to subject the possessor to liability for conversion of the chattel.

This is an appeal from a summary judgment entered in favor of appellee, U–Haul Company of Arizona (U–Haul), and against appellant, Focal Point, Inc. (Focal Point). The issue on appeal is whether U–Haul converted a truck containing stored artwork which it had rented to Focal Point.

The facts are basically undisputed. On July 8, 1982, James W. Creason, an agent of Focal Point, leased a truck from U–Haul. The truck rental contract provided that the lease was to run from July 8 to July 15. The contract listed the lessee's address as 4215 North 63rd. Drive, Phoenix, and the lessee's name as James W. Creason. Focal Point was not mentioned in the lease and no phone number was listed. After the truck was leased, it was loaded

with artwork from Focal Point's inventory and parked unlocked in a vacant lot at 3820 N. 4th Street. On July 14, 1982, an employee of U–Haul, acting on a tip, removed the truck from the vacant lot, in the mistaken belief that the truck had been abandoned. The truck was taken to the North Central U–Haul Center where its contents were inventoried and examined by U–Haul. The truck was then placed in a secure, locked parking lot. Both the cab and the box of the truck were locked as well.

Focal Point noticed that the truck was missing on July 14. Initially Focal Point was unable to determine the truck's whereabouts, but subsequently contacted U–Haul. U–Haul was unable to provide Focal Point with the location of the truck, but suggested that Focal Point contact it again the following day.

On July 15, Focal Point re-contacted U–Haul. U–Haul admitted that it was in possession of the truck. Focal Point demanded that U–Haul return the truck to the vacant lot from which it had been removed. U–Haul requested that Focal Point come to the U–Haul lot to verify that the truck was indeed leased to Focal Point, at which time U–Haul would agree to release the truck. Focal Point responded by renewing its demand that U–Haul return the truck to the lot. This suit was filed the next day, July 16, 1982.

Based upon these undisputed facts, the trial court made the following relevant findings of fact and conclusions of law: (1) U–Haul did not exercise nor intend to exercise dominion over Focal Point's property; (2) U–Haul never refused to relinquish the property to Focal Point; (3) U–Haul was not guilty of conversion; and (4) Focal Point was still the owner of the property in question. Accordingly, summary judgment was entered in favor of U–Haul on Focal Point's claim of conversion, which sought $62,000 in damages for the value of the art work. However, the trial court did determine, after a trial, that U–Haul was guilty of damaging Focal Point's property (under a bailment theory) and assessed damages in the sum of $10,000.00.[1] This appeal followed.

Arizona law on the tort of conversion stems from the seminal case of *Shartzer v. Ulmer*, 85 Ariz. 179, 333 P.2d 1084 (1959), which defined conversion as "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Id.* at 184, 333 P.2d at 1088.

From this definition, Focal Point argues that the taking of the truck and its load of art work during the term of the lease was a trespass, and that U–Haul's placing of the truck behind a fence with locked gates, and refusing to return the truck upon demand, both constituted acts of dominion inconsistent with Focal Point's possessory interest in its art work.

■ However, more recently, Division 2 expanded the *Shartzer* definition by adopting the position enunciated in the Restatement (Second) of Torts § 222(A)(1) (1965). *Mobile Discount Corp. v. Schumacher*, 139 Ariz. 15, 676 P.2d 649 (App.1984). Section 222(A)(1) defines conversion as:

> An intentional exercise of dominion or control over a chattel which so *seriously interferes* with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel (emphasis added).

As can be seen, the Restatement definition of conversion adds the element of serious interference to the simpler definition set forth in the prior case law. In our opinion, the adoption by Division 2 of the Restatement definition of conversion is a correct summation of Arizona law on the subject. *See Huskie v. Ames Bros. Motor & Supply Co.*, 139 Ariz. 396, 678 P.2d 977 (App.1984)[2]

■ Historically, tort law has drawn a distinction between mere interference with the chattel, and the "exercise of defend-

---

1. U–Haul filed an untimely cross-appeal from this judgment. Because the cross-appeal is untimely, we lack appellate jurisdiction to determine the merits of this judgment. Rule 9(a), Arizona Rules of Civil Appellate Procedure.

2. *Huskie* was decided in Division 1. The court cites § 223(A) as additional source material supporting the *definition* of conversion outlined in *Sterling Boat Co. v. Arizona Marine, Inc.*, 134 Ariz. 55, 653 P.2d 703 (App.1982). This citation, however, is apparently incorrect, and should

ant's hostile control over it." Restatement (Second) of Torts § 222(A), Comment a, (1965), citing *Fouldes v. Willoughby*, 8 M. & W. 540, 151 Eng.Rep. 1153 (1841). The basis for this distinction lies in the recognition that there are degrees of interference with property. This is reflected in the measure of damages assessed as a result of the interference. To determine the seriousness of the interference we take the following factors into account: (1) the extent and duration of U–Haul's alleged exercise of dominion or control; (2) U–Haul's alleged intent to assert a right in fact inconsistent with Focal Point's right of control; (3) the extent and duration of the resulting interference with Focal Point's right of control; (4) damage done to the truck and its contents; and, (5) the inconvenience and expense caused to Focal Point. Restatement (Second) of Torts § 222(A)(2) (1965).[3]

Applying these factors to the instant case, we hold that no conversion of Focal Point's property occurred on either July 14 or July 15. Focal Point had only to travel the two miles to U–Haul's storage center, show right to possession and reclaim control over the truck and artwork. Focal Point had the opportunity to reclaim the property within a day of having been dispossessed of it. The inconvenience and expense were minimal. The artwork was placed into the truck for storage. There was no evidence to indicate that Focal Point was precluded from enjoyment of its property beyond the knowledge that such property was "safely" stored in an unlocked truck parked in a vacant lot. Also, it would have been far more efficacious for Focal Point to simply reclaim its property, than to seek a forced judicial sale of the artwork. Finally, the evidence supports the finding that U–Haul did not intend to assert a right which was in fact inconsistent with Focal Point's right of control. While U–Haul did possess the truck and artwork, it did not intend to hold the truck and artwork against Focal Point's owner-

ship interest. Rather, it only attempted to verify that interest.

Focal Point also contends that U–Haul is liable for conversion damages based on the alleged trespass by U–Haul onto the vacant lot when the truck was initially recovered. Focal Point argues that the "illegal" act of entering onto the property of another provides us with sufficient grounds to require U–Haul to pay the full value of the artwork. In support, Focal Point cites a line of cases from other jurisdictions which hold that the repossession of secured property constitutes a conversion where the repossession involves an illegal act, such as the breaking of a lock on the purchaser's garage door. The repossession cases cited by Focal Point stand for the proposition that a secured party to a purchase agreement may, upon default, take possession of the collateral property without judicial process, provided that no breach of the peace occurs. *See Thompson v. Ford Motor Co.*, 324 F.Supp. 108 (1971). In the instant case, U–Haul was not repossessing the truck as collateral property, nor was it in the position of a secured creditor to a purchase contract with Focal Point. U–Haul was merely recovering what it thought to be an abandoned truck. There is no evidence to indicate that any breach of the peace occurred during the recovery.

The trial court correctly held that U–Haul was not guilty of conversion and therefore should not be subjected to a forced judicial purchase of the artwork.

The judgment of the trial court in favor of appellee U–Haul is affirmed.

SHELLEY, Acting P.J., and HAIRE, J., concur.

read § 222(A). Restatement (Second) of Torts Appendix (1986).

3. The court declines to adopt § 222(A)(2) in its entirety. Section 222(A)(2)(c) includes good faith as a factor determinative of the seriousness of the interference. Good faith belief or

intention is no defense to a conversion action in Arizona. *Patton v. First Federal Savings and Loan Ass'n. of Phoenix*, 118 Ariz. 473, 578 P.2d 152 (1976); *Jabczenski v. Southern Pacific Memorial Hospital*, 119 Ariz. 15, 579 P.2d 53 (App. 1978).