**JOHN DEERE CO., Plaintiff,**

v.

**John P. WALKER, et al., Defendants.**

**No. CIV 90–839–PHX–EHC.**

United States District Court,
D. Arizona,
Phoenix Division.

March 26, 1991.

Blaine T. Welsh, Phoenix, Ariz., for plaintiff.

Abraham M. Bernstein, Sharon E. Reuss, Steven D. Copple, Phoenix, Ariz., for defendants.

## ORDER

CARROLL, District Judge.

Defendants John Walker and his company, John Walker Trucking, Inc. (hereafter, "Walker") purchased combines from John Deere in July of 1985, pursuant to an agreement giving Deere a security interest in the combines. In 1988, Walker sought to sell these combines, and retained Defendant O'Neil to "draft documents and memorialize certain business transactions which Walker had negotiated." O'Neil in-

corporated his practice as William J. O'Neil, Ltd. and practices with A. Thomas Cole, Ltd. in the partnership of Cole & O'Neil, all of whom are defendants. O'Neil and these latter defendants (hereafter, "O'Neil" or the "attorney defendants") bring this motion for summary judgment.

In April, 1988, Walker negotiated a deal to sell the combines to Larry Stalter of Farmer-to-Farmer, Inc. Stalter delivered a $10,000 check to O'Neil to be deposited into a trust account. O'Neil was told of the liens prior to this time and the draft agreement acknowledged the liens and provided for their satisfaction. (Plaintiff's statement of facts, #7 and #8). On May 20, 1988, O'Neil returned Stalter's money, stating that Stalter was in default as he failed to deposit the full purchase price into O'Neil's account. Further, Stalter had requested "complete and clear title" for the combines which was "a practical impossibility." (Exhibit 4 to defendants' motion).

Also on May 20, another buyer agreed to purchase the equipment. On May 23, Walker requested that O'Neil hold the purchase money in an intermediary account until the transaction was accomplished. The Australian buyer, MacDonald, conducted his business through Spencer Taylor; Taylor agreed to O'Neil holding the purchase money. On May 24, 1988, Taylor delivered $125,000 by direct deposit into the trust account of Walker Trucking.

On May 27, 1988, Taylor requested that he be sent serial numbers and lien releases when Walker had paid off the Deere lien. (Exhibit 5 to defendants' motion and O'Neil affidavit, #9). On June 2, O'Neil wrote Walker to request the serial numbers; in this letter, O'Neil stated, "I also need to know when you are going to pay that off as per [Taylor's] letter." (Exhibit 6, defendants' motion).

On October 18, 1988, Taylor took possession of the combines, called to authorize O'Neil to issue a check to Walker and requested that O'Neil prepare a receipt providing lien releases after the combines were paid off to Deere. On this date, Taylor was provided a receipt which stated that Walker would provide lien releases "upon payment in full of your undersigned's debts to John Deere." (Exhibit 7 to defendants' motion). It is unclear how this "receipt" was delivered to Taylor. There was no indication of when that debt would be paid.

Walker failed to make payments on the combines for the months of July and September, 1989. Deere declared the agreement in default. The relevant section of the Security Agreement states,

> [The Security Agreement] shall be in default if [Walker] shall fail to pay any installment when due or if [Walker] shall attempt to sell or encumber any interest in the goods.... In any such event the holder may immediately and without notice declare the entire balance of the Contract due and payable together with reasonable expenses incurred in realizing on the security interest granted hereunder.

When repossession proved impossible because the equipment had been transported to Australia, the plaintiffs brought suit against Walker and the attorney defendants for breach of contract by Walker, conversion and Arizona RICO violations by both Walker and the attorney defendants, and negligence by the attorney defendants. Defendants' motion for summary judgment addresses only the conversion and negligence claims against the attorney defendants.

*The Conversion Claim*

The attorney defendants move for summary judgment on this claim, contending that as agents of Walker they cannot be held liable for conversion. The Arizona courts have not addressed when an agent may be held liable for conversion; this Court will thus follow the Restatement. *Barnum v. Rural Fire Protection Co.*, 24 Ariz.App. 233, 537 P.2d 618 (1975).

The Restatement of Torts (Second), Section 231, entitled "Receiving Possession as Agent or Servant in Consummation of Transaction", provides

> (1) Except as stated in Subsection (4) [regarding negotiable instruments], one who, as agent or servant, receives the

possession of a chattel on behalf of his principal or master in consummation of a transaction negotiated by the actor for the purpose of giving a proprietary interest in the chattel to the principal or master, is subject to liability for a conversion to another who is entitled to the immediate possession of the chattel.

(2) An agent or servant who negotiates a transaction for the purpose of giving to his principal or master a proprietary interest in a chattel is not liable for a conversion to another who is entitled to the immediate possession, if the agent or servant does not receive the possession of the chattel in consummation of the transaction and if he neither knows nor has reason to know that the person disposing of the chattel is not authorized so to dispose of it.

(3) An agent or servant who receives the possession or custody of a chattel on behalf of his principal or master in consummation of a transaction negotiated by his principal or master is not liable for a conversion to another who is entitled to the immediate possession of the chattel, if the agent or servant neither knows nor has reason to know that the person thus disposing of the chattel is not authorized so to dispose of it.

Section 233, "Conversion by Disposition by Agent as Against One Other Than Principal" states,

(1) Except as stated in Subsection (4) [regarding negotiable instruments], one who as agent or servant of a third person disposes of a chattel to one not entitled to its immediate possession in consummation of a transaction negotiated by the agent or servant, is subject to liability for a conversion to another who, as against his principal or master, is entitled to the immediate possession of the chattel.

(2) An agent or servant who negotiates a transaction for the purposes of transferring a proprietary interest in a chattel is not liable for conversion to another who is entitled to its immediate possession, if

the actor does not deliver the chattel pursuant to such transaction, and if the agent or servant neither knows nor has reason to know that his principal or master does not have authority so to dispose of it.

(3) An agent or servant who merely delivers a chattel in consummation of a transaction negotiated by his principal or master is not liable for a conversion to another who is entitled to the immediate possession of the chattel, if the agent or servant neither knows nor has reason to know that his principal or master is not authorized so to dispose of it.

First, there is dispute regarding whether O'Neil negotiated the transaction. O'Neil's affidavit states that he "was not involved in negotiating the sale of the Combines, scheduling or organizing the pick up of the Combines" and his "legal representation of Walker was limited to formalizing agreements which Walker had already negotiated." (Exhibit 2 to defendants' motion, # 11 and # 13). The plaintiff has not introduced any admissible evidence that O'Neil was involved in the negotiations. Thus, subsections (1) and (2) of both Section 231 and 233 do not apply.[1]

Subsections (3) of Section 231 and 233 address the liability of an agent whose principal has negotiated the transaction. Under both subsections, if the principal has negotiated the transaction, an agent is not liable for a conversion if the agent neither knows nor has reason to know that the person disposing of the chattel is not authorized to dispose of it or that his principal is not authorized to dispose of it. It is indisputable that O'Neil knew that a lien existed, as evidenced by the proposed contract for the Stalter sale, which provided for the satisfaction of the liens. O'Neil therefore may not take advantage of these subsections absolving him of liability for conversion.

However, the defendant argues that in order to be held liable for conversion, he

---

1. The record is subject to an arguable inference that the purchaser of the combines intended to ship the combines to Australia once they were delivered to him, and that he was not concerned about actually receiving lien releases.

must have had possession of the combines. The Restatement (Second) of Agency, § 349 [2], Comment e states, "A mere intermediary who does nothing more than negotiate a sale of goods not in his possession or control is not so liable." Thus, it appears that the Restatement contemplates that possession is necessary to hold an agent liable for conversion.[3] There is no dispute that O'Neil was never in possession of the combines.

However, Arizona law does not require possession of the combines in order to be held liable for conversion. Arizona law defines conversion in general as "any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Focal Point v. U–Haul Co. of Arizona*, 155 Ariz. 318, 319, 746 P.2d 488 (App.1987), *citing Shartzer v. Ulmer*, 85 Ariz. 179, 333 P.2d 1084 (1959). Courts of Appeals have extended this definition to match the Restatement (Second) of Torts § 222(A)(1):

> An intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

*Focal Point, supra* (citations omitted). Although O'Neil did not exercise dominion over the actual combines, he did exercise dominion and control over the proceeds of the sale.

■ Under Arizona law, proceeds of a sale can be the subject of an action for conversion under certain circumstances.

In *Markel v. Transamerica Title Ins. Co.*, 103 Ariz. 353, 361, 442 P.2d 97, *cert. denied, Phoenix Title & Trust Co. v. Markel*, 393 U.S. 999, 89 S.Ct. 484, 21 L.Ed.2d 463 (1968), an escrowee was held liable for conversion when he disbursed proceeds from the trust to a party not entitled to the money, even though the disbursement was in good faith. Further, in *Stokes v. Stokes*, 143 Ariz. 590, 694 P.2d 1204 (App.1984), the Arizona Court of Appeals stated that money could be the subject of conversion if it can be described, identified or segregated and an obligation to treat it in a specific manner is established. *Stokes*, at 594, 694 P.2d 1204.[4] In this case, the proceeds from the sale of the combines were put in a separate trust account; the proceeds were therefore described, identified, and segregated.

Further, O'Neil had an obligation as an escrowee to disburse pursuant to the instructions of the parties. There is a dispute regarding the instructions that O'Neil received regarding payment of the liens. Defendants claim that O'Neil was instructed to send the lien release "when Walker had paid off the John Deere Company's lien." (Exhibit 5, defendants' motion). Plaintiff claims that O'Neil was instructed to pay off the liens before disbursing the funds to Walker. Although the plaintiff has not introduced any admissible affidavits which demonstrate that O'Neil was indeed given these instructions, Neil MacDonald testified in his deposition that it is a "standing instruction" that the liens are paid before the money is disbursed to the seller. Further, Taylor testified in his dep-

---

**2.** This section states, "An agent who does acts which would otherwise constitute trespass or conversion of a chattel is not relieved from liability by the fact that he acts on account of his principal and reasonably, although mistakenly, believes that the principal is entitled to possession of the chattels."

**3.** Cases in other jurisdictions do not specifically address whether an agent must have possession of the chattel in order to be held liable for conversion, though most of the cases in fact involve possession. In *First National Bank v. Southwestern Livestock, Inc.*, 859 F.2d 847, 850 (10th Cir.1988), an auction house acting as a debtor's agent was held liable for conversion. There, the bank had a security interest in the

cattle auctioned, and the security agreement denied the owner of the cattle authority to sell them. Other cases have reached similar results involving auctioneers. See *United States v. Holland Sales*, 603 F.Supp. 1379 (E.D.Pa.1984); *United States v. Carson*, 372 F.2d 429 (6th Cir. 1967); *United States v. Matthews*, 244 F.2d 626 (9th Cir.1957) (applying federal common law regarding the Packers and Stockyards Act).

**4.** In *Stokes,* the court overturned the trial court order that a portion of the husband's disability benefits be paid to his former wife; because the debt could have been discharged by payment of money generally, it did not fulfill the above requirements.

osition that although he didn't remember what he said to O'Neil, "the reason that we got Mr. O'Neil was to make sure that the liens were paid." (Exhibit 12 to defendants' reply).

O'Neil cites authority that the duties of the escrow agent are defined by the written instructions given to the escrow agent. *Burkons v. Ticor,* 165 Ariz. 299, 798 P.2d 1308 (App.1989); *Tucson Title Insurance Co. v. D'Ascoli,* 94 Ariz. 230, 383 P.2d 119 (1963). The only written instruction before the Court is the letter from Taylor which states, "Also when John pays off the loan to John Deere send a paid release to me." (Exhibit 7 plaintiff's response). However, this directive is not clear; this letter was written before the exchange of equipment occurred and Taylor may have intended that the lien be paid before this time.

Further, regardless of the explicit instructions received, as an escrow agent O'Neil should have had the buyer's interests in mind, and disbursing the money without ensuring the liens were paid was against those interests, especially given Walker's financial situation. Because there is a material issue of fact regarding whether O'Neil followed the instructions of the parties and the extent of his knowledge regarding Walker's financial circumstances, defendants' motion for summary judgment on the conversion claim will be denied.

### The Negligence Claim

■ An attorney's duty to a third party is derivative of the duty owed to a client. *Franko v. Mitchell,* 158 Ariz. 391, 762 P.2d 1345 (App.1988). Thus, in order to be held negligent as to plaintiff, O'Neil must have been negligent in his dealings with his client. Plaintiff contends that O'Neil was negligent in representing Walker as O'Neil should have acquainted himself with the security agreement and advised Walker that he faced civil and criminal sanctions by selling the combines without satisfying the liens. In support of this contention, plaintiff cites deposition testimony in which O'Neil testified that he did not advise Walker of these matters.

Defendants argue that O'Neil was not negligent in advising his client, as Walker was a sophisticated client who negotiated the sale of the combines and was aware of the need to pay the liens. However, defendants do not introduce any evidence that Walker was aware of the consequences of selling the combines without paying the liens. Therefore, there is a material issue of fact regarding whether O'Neil was negligent in his advice to his client.

■ Once that threshold is met, however, in order to be held liable for negligence to a third party the following factors are taken into account: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injuries suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. *Fickett v. Superior Court of Pima County,* 27 Ariz. App. 793, 558 P.2d 988 (1976); *Franko, supra.*

Defendants argue that the *Fickett* test is not satisfied. They argue that (1) O'Neil's acts did not involve the lien and therefore did not affect plaintiff; (2) there was no foreseeability of harm to plaintiff because Walker "appeared to be financially stable to O'Neil" and the lien release "was being considered by Walker and Taylor"; (3) there was no certainty of harm to plaintiff as plaintiff would only be harmed if Walker did not pay the liens; (4) there was no connection between O'Neil's conduct and the harm since O'Neil did not have a duty to pay off the liens; (5) there was no moral blame on O'Neil's part since he was not involved in the negotiations; (6) there is no need for a policy to prevent future harm as Deere has its own attorneys to oversee the payment of liens.

Plaintiff contends that the *Fickett* test is satisfied in the following way: (1) the transaction obviously affected the plaintiff as it involved whether its liens would be satisfied; (2) the harm to plaintiff was foreseeable as O'Neil knew Walker was in bad financial shape and knew the equipment would be transported to Australia; (3)

plaintiff was certain to suffer injury as it would lose in excess of $150,000 if the liens were not paid; (4) the connection between O'Neil's conduct and plaintiff's injuries is direct as Deere would have received the money owed to it if O'Neil had not disbursed the entire amount to his client or it could foreclose on its security and sell the combines; (5) there is moral blame attached to O'Neil's conduct, as evidenced by criminal sanctions for fraudulent transfers of encumbered equipment; (6) the court would prevent future similar conduct by holding O'Neil liable. This Court must view the evidence in the light most favorable to the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Thus, for this purpose, the Court adopts the plaintiff's interpretation of the facts and concludes that there is a dispute of material fact preventing summary judgment.

The plaintiff also argues that O'Neil was negligent as an escrow agent. Based on the previous conclusion that there is a dispute regarding whether O'Neil followed the instructions of the buyer in disbursing the funds, defendants' motion for summary judgment will be denied.

Accordingly,

IT IS ORDERED denying defendants' Motion for Summary Judgment.