In re Michael R. SULLIVAN and
Kathleen J. Sullivan,
Debtors.

M–R SULLIVAN MANUFACTURING
COMPANY, INC., Plaintiff,

v.

Michael R. and Kathleen J. SULLIVAN,
Defendants.

Bankruptcy No. 96–43015–HJB.
Adversary No. 96–4366.

United States Bankruptcy Court,
D. Massachusetts.

Feb. 5, 1998.

David A. Talman, Worcester, MA, for Plaintiff.

Stephen K. Midgley, Mansfield, MA, for Debtors.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before this Court for determination are cross motions for summary judgment. In this action, the Plaintiff, M–R Sullivan Manufacturing Company (the "Company" or the "Plaintiff"), seeks to establish that a debt owed to the Company by the debtors, Michael and Kathleen Sullivan (individually "Mr." or "Mrs. Sullivan" or jointly the "Debtors" or the "Defendants"), is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and/or (6). Allowance or denial of the motions turns on the collateral estoppel effect of a judgment of an Arizona state court.

### I. Facts and Positions of the Parties

While the record before the Court is sparse and the parties disagree on many facts relative to events which occurred prior to the filing of this case, the following facts are free from material dispute.

Mr. and Mrs. Sullivan formerly served as President and employee, respectively, of the Company.[1] Incorporated in Arizona in 1990, the Company's business was the manufacture and sale of items used by dentists and dental laboratories to make investment castings for dental implants. In connection with its business, the Company manufactured and sold a casting ring system known as "Clearese."

---

1. The only evidence given to this Court by either party regarding Mrs. Sullivan's relationship with the Plaintiff was that she served as an employee. The Court has no information as to Mrs. Sullivan's position in the Company or the scope of her employment.

The Clearese system was patented in March 1993.

Later in 1993, the Debtors, individually, entered into an agreement with Leach & Dillon Company ("L & D"). The agreement gave L & D the right to manufacture dental implants using the Clearese system. Subsequently, three minority shareholders of the Company commenced a shareholders' derivative suit against the Debtors in the Superior Court of Arizona, Maricopa County, alleging that the Debtors had converted corporate assets. Specifically, it was claimed that the Clearese patent was corporate property and that the Debtors had converted the patent and certain corporate funds for their personal use. The Debtors countered that they were the sole owners of the patent and as such had authority to lease the rights of Clearese to L & D. On August 10, 1995, a jury found for the Plaintiff and held the Debtors liable for conversion, with damages in the amount of $518,500.00 ("$500,000 for conversion of the Clearese patent and $18,-500 for conversion of corporate funds"). That judgment, arising from the jury's general verdict, is final.

On June 5, 1996, the Debtors filed a voluntary petition in this court under Chapter 7 of the Bankruptcy Code. On or about August 27, 1996, the Company filed its complaint in this adversary proceeding seeking to have the aforesaid debt determined nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and/or (6). The Debtors filed an answer to the complaint, denying its substantive allegations. The Plaintiff then filed the instant motion seeking summary judgment primarily on the grounds that, pursuant to the doctrine of collateral estoppel, the state court judgment established for the purpose of this action that the Debtors' acts of conversion constituted their "defalcation while acting in a fiduciary capacity" as set forth in § 523(a)(4), and caused a "willful and malicious" injury to the Plaintiff as set forth in § 523(a)(6). Attached to the Plaintiff's motion is the affidavit of William Venditti (the "Venditti Affidavit"), one of the minority shareholders who brought the derivative suit against the Debtors in Arizona. The Debtors responded with

an opposition to Plaintiff's motion and their own motion for summary judgment arguing that all of the elements necessary to determine the debt nondischargeable under § 523(a)(4) or (6) had not been "actually litigated" in the Arizona case. The Debtors filed no affidavit in conjunction with their opposition or motion. After hearing the cross motions for summary judgment, the Court took the matters under advisement.

II. *Discussion*

**A. Summary Judgment**

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Bankr.P. 7056; Fed.R.Civ.P. 56(c); *DeNovellis v. Shalala,* 124 F.3d 298, 305 (1st Cir.1997). The moving party bears the burden of showing the "absence of evidence to support the non-moving party's position." *Weiss v. Blue Cross Blue Shield of Delaware,* 206 B.R. 622, 624 (1st Cir. BAP 1997); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" *Barbour v. Dynamics Research Corp.,* 63 F.3d 32, 36 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)), *cert. denied,* 516 U.S. 1113, 116 S.Ct. 914, 133 L.Ed.2d 845 (1996). The court must then resolve any disputed facts and inferences in favor of the party opposing summary judgment. *Fleet Nat'l Bank v. H & D Entertainment, Inc.,* 96 F.3d 532, 537 (1st Cir.1996).

Each of the cross motions is grounded on the applicability of the doctrine of collateral estoppel.[2] If, as the Plaintiff contends in its

**2.** Since the Debtors' motion argues only that the     doctrine of collateral estoppel should not be ap-

motion, all of the elements necessary to a finding of nondischargeability under § 523(a)(4) and/or (6) can be resolved by applying the doctrine of collateral estoppel, summary judgment should be granted in its favor. On the other hand, if, as Debtors contend, collateral estoppel cannot be invoked to resolve all of the elements required to be proven under § 523(a)(4) and/or (6), partial summary judgment should be granted with respect to those elements, if any, to which collateral estoppel can be invoked or can otherwise be established as a matter of law; and denied as to the balance. *See* Fed.R.Civ.P. 56(d).

## B. Collateral Estoppel

The Supreme Court has held that collateral estoppel principles apply in bankruptcy cases to determine the nondischargeability of a debt. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991). In the case of *Grella v. Salem Five Cent Savings Bank*, the United States Court of Appeals for the First Circuit restated the doctrine of collateral estoppel, or issue preclusion, as follows:

> When there is an identity of the parties in subsequent actions, a party must establish four essential elements for a successful application of issue preclusion to the later action: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment.

42 F.3d 26, 30 (1st Cir.1994) (citing *NLRB v. Donna–Lee Sportswear Co., Inc.*, 836 F.2d 31, 34 (1st Cir.1987)); *see also Friedman v. Internal Revenue Serv. (In re Friedman)*, 200 B.R. 1, 4 (Bankr.D.Mass.1996).

■ "In determining the collateral estoppel effect of a state court judgment, federal courts must, as a matter of full faith and

credit, apply that state's law of collateral estoppel."[3] *Bugna v. McArthur (In re Bugna)*, 33 F.3d 1054, 1056 (9th Cir.1994); *United States v. One Parcel of Real Property*, 900 F.2d 470, 473 (1st Cir.1990). It is well established, therefore, that the collateral estoppel law of the state in which a judgment is rendered applies in determining the dischargeability of a debt. *Hagan v. McNallen (In re McNallen)*, 62 F.3d 619, 624 (4th Cir.1995); *see Rally Hill Prod., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51 (6th Cir. 1995) (applying Tennessee collateral estoppel law to determine dischargeability of debt); *Bugna*, 33 F.3d at 1057 (applying California law of collateral estoppel to determine the dischargeability of a debt); *In re Bulic*, 997 F.2d 299, 304 n. 6 (7th Cir.1993) (applying Indiana collateral estoppel law to determine dischargeability); *St. Laurent, II v. Ambrose (In re St. Laurent, II)*, 991 F.2d 672, 675–76 (11th Cir.1993) (applying Florida collateral estoppel law to determine dischargeability of debt under § 523(a)(2)(A)); *Stowe v. Bologna (In re Bologna)*, 206 B.R. 628, 631 (Bankr. D.Mass.1997) (applying Massachusetts law of collateral estoppel to dischargeability of debt under 11 U.S.C. § 523(a)(4)).

■ Under Arizona law, the doctrine of collateral estoppel is applied whenever: (I) the issue was "actually litigated in a previous suit," (ii) a final judgment was entered, (iii) the party against whom the doctrine is to be invoked had a "full and fair opportunity to litigate the matter and actually did litigate it," and (iv) the issue was "essential to the prior judgment." *In re First Actuarial Corp. of Illinois*, 182 B.R. 178, 183 (Bankr. W.D.Mich.1995) (citing *Chaney Bldg. Co. v. City of Tucson*, 148 Ariz. 571, 716 P.2d 28, 30 (1986)). Having concluded that Arizona law is applicable in this case, this Court must determine whether the doctrine of collateral estoppel as applied in Arizona precludes the dischargeability of the Arizona state court judgment pursuant to § 523(a)(4) and/or (6).

---

plied, it does not really state any viable basis for summary judgment in the Debtors' favor. As a result, the Debtors' motion will be treated here as a supplemental opposition to the Plaintiff's motion for summary judgment.

**3.** 28 U.S.C. § 1738 provides that state judicial court proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such [s]tate ... from which they are taken."

Alternatively, the Court may find an element of proof established if no genuine issue of material fact exists and it can be established as a matter of law.

### C. Section 523(a)(4)

Bankruptcy Code section 523(a)(4) provides that a debtor may not discharge "any debt ... for fraud or defalcation while acting in a fiduciary capacity[.]" 11 U.S.C. § 523(a)(4). The jury in the Arizona state court action found the Debtors liable for the tort of conversion. The Plaintiff claims that those actions of the Debtors constituted a defalcation while the Debtors were acting in a fiduciary capacity, and therefore, the elements of § 523(a)(4) are deemed established under the doctrine of collateral estoppel. The Debtors contend that the state court judgment did not turn on whether they had a fiduciary relationship with the Company or whether they committed a defalcation while in a fiduciary capacity within the meaning of § 523(a)(4).

#### 1. Fiduciary Capacity

The initial question is whether the Debtors were acting in a fiduciary capacity. The definition of "fiduciary" under § 523(a)(4) has been narrowly construed to apply only to relationships involving express or technical trusts, and not trusts that are imposed by law as a remedy. *See, e.g., Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153–54, 79 L.Ed. 393 (1934). Accordingly, implied or constructive trusts, and trusts ex maleficio do not establish fiduciary relationships under the Code. *Id; see also Brixius v. Christian (In re Christian),* 172 B.R. 490, 495 (Bankr.D.Mass.1994). Moreover, the requisite trust relationship must exist prior to the act creating the debt and without reference to the act. *Carlisle Cashway, Inc. v. Johnson (In re Johnson),* 691 F.2d 249, 252 (6th Cir.1982) (citing *Davis,* 293 U.S. at 333, 55 S.Ct. at 153–54).

Since no express trust relationship is claimed, this Court must determine whether a technical trust existed between the Debtors and the Company. A technical trust is a trust that is imposed by law and may arise either by statute or common law. *See*

*Bakis v. Snyder (In re Snyder),* 101 B.R. 822, 831 (Bankr.D.Mass.1989). Courts have consistently considered state law relevant in determining whether a technical trust relationship exists for purposes of the Bankruptcy Code. *Christian,* 172 B.R. at 495; *Kwiat v. Doucette,* 81 B.R. 184, 188 (D.Mass.1987). In analyzing common law technical trusts, courts typically examine state law to determine if it imposes fiduciary obligations on the relevant party. *Id.*

In Arizona, conversion is defined as "[a]n intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Focal Point, Inc. v. U–Haul Co. of Arizona, Inc.,* 155 Ariz. 318, 746 P.2d 488, 489 (Ct.App. 1986) (adopting the position enunciated in the Restatement (Second) of Torts § 222(A)(1) (1965)). No special relationship between the tortfeasor and the victim need be shown. Therefore, the existence of a fiduciary relationship between the Debtors and the Company was not a necessary element of the Arizona judgment, and collateral estoppel is inapplicable. Nevertheless, the Court should examine each Debtor's relationship with the Company in order to determine whether their respective *conceded* relationships satisfy the necessary element. That analysis must proceed for each debtor individually, since each Debtor held a different position in the Company, and § 523(a)(4) expressly provides that a debt will be deemed nondischargeable only in the event that an "individual debtor" committed a defalcation while acting in a fiduciary capacity. *Cf. Columbia Farms Distrib., Inc. v. Maltais (In re Maltais),* 202 B.R. 807, 811 (Bankr.D.Mass.1996).

##### a. Mr. Sullivan as President

In Arizona, it is well established that a director or officer of a corporation owes a fiduciary duty to the corporation. *Master Records, Inc. v. Backman,* 133 Ariz. 494, 652 P.2d 1017, 1020 (1982) (citing *Atkinson v. Marquart,* 112 Ariz. 304, 541 P.2d 556, 558 (1975)). The officer or director owes the corporation a duty to act only in the corpora-

tion's best interests. Ariz.Rev.Stat. Ann. § 10–842 (West 1994). "This duty is in the nature of a trust relationship," *Atkinson,* 541 P.2d at 558, and forbids the doing of any act by which the assets of the corporation are wrongfully diverted from corporate purposes. *Master Records, Inc.,* 652 P.2d at 1022 (quoting 3A *W. Fletcher, Cyclopedia of the Law of Private Corporations* § 1022 (rev.per. ed.1975)).

In *Bakis v. Snyder (In re Snyder),* 101 B.R. 822 (Bankr.D.Mass.1989), Judge Gabriel found the fiduciary duties of corporate directors under state law to satisfy the requirements of § 523(a)(4) of the Bankruptcy Code. *Snyder,* 101 B.R. at 835, *aff'd in relevant part and rev'd in part on other grounds sub nom. Snyder v. Bornstein,* 923 F.2d 840 (1st Cir.1990), *cert. denied,* 500 U.S. 923, 111 S.Ct. 2030, 114 L.Ed.2d 115 (1991). Since *Snyder,* corporate officers and directors with fiduciary obligations under state law have consistently been found to be fiduciaries under § 523(a)(4). *See Miramar Resources, Inc. v. Shultz (In re Shultz),* 205 B.R. 952 (Bankr.D.N.M.1997) (state law fiduciary duty of corporate director was sufficient for purposes of discharge exception under § 523(a)(4)); *Assurance Systems Corp. v. Jackson (In re Jackson),* 141 B.R. 909 (Bankr.N.D.Tex.1992) (common law fiduciary duty of corporate officer established a fiduciary relationship for purposes of § 523(a)(4)); *In re Collins,* 137 B.R. 754 (Bankr.E.D.Ark.1992) (state common law corporate officer's duty to corporation constitutes a fiduciary duty for nondischargeability purposes); *McLaughlin v. Jones (In re Jones),* 114 B.R. 917 (Bankr.N.D.Ohio 1990) (corporate officer and director owed a fiduciary duty under state law to a particular corporate creditor for purposes of § 523(a)(4)). Based on the weight of authority, this Court finds that the fiduciary duties of corporate officers and directors under Arizona law satisfy the element of fiduciary relationship required to be proven under § 523(a)(4) of the Bankruptcy Code. Therefore, Mr. Sullivan as president of the Company was its fiduciary for the purposes of the Plaintiff's claim under § 523(a)(4).

#### b. Mrs. Sullivan as Employee

■■■■■ "Fiduciary capacity within the meaning of section 523(a)(4) may be found in an employment relationship." *Compugraphic Corp. v. Golden (In re Golden),* 54 B.R. 957, 964 (Bankr.D.Mass.1985). In *Golden,* the court held that a department manager who obtained unauthorized kickbacks was the fiduciary of his employer where the manager "occupied a position of trust, was in control of corporate property, and was given responsibility for maintenance and disbursement of corporate funds to vendors." *Id.; see also American Title Insurance, Co. v. Marderosian (In re Marderosian),* 186 B.R. 341 (Bankr.D.R.I.1995) (insurance agent who issued "clean" title insurance policies to purchasers of property upon which there were preexisting mortgages, and misappropriated funds held in escrow accounts entrusted to him for purposes of paying off existing mortgages was a fiduciary under § 523(a)(4)); *American Machinery & Engineering Corp. v. Entrekin (In re Entrekin),* 40 B.R. 435 (Bankr.S.D.Fla.1984) (debtors employed as computer programmers who controlled disbursement of their employer's cash flow were found to be fiduciaries under § 523(a)(4)). These cases illustrate that an employee can be found to have acted in a fiduciary capacity under § 523(a)(4) if that employee occupies a position of trust within the scope of his or her employment.

■■■■ The only information presented to this Court by either party with respect to Mrs. Sullivan is that she was an employee of the Company. Without more, this Court cannot draw any conclusion as to the presence or absence of a fiduciary relationship between Mrs. Sullivan and the Company. Therefore, a genuine issue of material fact exists as to whether Mrs. Sullivan was acting in a fiduciary capacity within the meaning of § 523(a)(4).

#### 2. Defalcation

■■■■ The next question is whether the state court judgment against the Debtors for the tort of conversion necessarily included elements equivalent to the meaning of the term "defalcation" under § 523(a)(4). A defalcation refers generally to a failure to ac-

count for money or property entrusted to a fiduciary. *Hoff v. Carroll (In re Carroll),* 140 B.R. 313, 316 (Bankr.D.Mass.1992). "However, the precise meaning of defalcation for purposes of § 523(a)(4) has never been entirely clear." *Quaif v. Johnson,* 4 F.3d 950, 954 (11th Cir.1993). The Code does not define the term "defalcation," and courts struggling to define defalcation have differed widely in establishing its necessary elements. What has divided courts has usually been the degree of fault, or type of intent, if any, required for a party to be guilty of a defalcation. *See Schwager v. Fallas (In re Schwager),* 121 F.3d 177 (5th Cir.1997) (defalcation does require some level of mental culpability); *Lewis v. Scott (In re Lewis),* 97 F.3d 1182 (9th Cir.1996) (defalcation may cover cases where the default is innocent); *Meyer v. Rigdon,* 36 F.3d 1375 (7th Cir.1994) (defalcation should be construed to require more than mere negligence); *Johnson,* 691 F.2d at 256 (actions committed in ignorance of the law, regardless of ignorance, constitute a defalcation); *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2d Cir.1937) (defalcation may demand some type of misconduct); *Fed. Deposit Ins. Corp. v. Gaubert (In re Gaubert),* 149 B.R. 819 (Bankr. E.D.Tex.1992) (defalcation requires recklessness); *Kwiat,* 81 B.R. at 190 (ignorance or negligence will suffice to constitute a defalcation). The First Circuit has not defined the term "defalcation" for the purposes of § 523(a)(4).

■ This issue is not one of first impression in this district or for this Court. In the case of *Brixius v. Christian (In re Christian),* 172 B.R. 490 (Bankr.D.Mass.1994), a debtor's former tenants brought an adversary proceeding pursuant to § 523(a)(4) to except from discharge damage awards entered against the debtor for failing to maintain (and then remit) tenants' security deposits in a separate interest bearing account as required by state law. In *Christian,* this Court held "that a defalcation is nothing more than a failure to account for money held in a fiduciary capacity and does not require a showing of intentional wrongdoing." *Christian,* 172 B.R. at 495.

Several other courts have concluded that defalcation includes innocent defaults or even the mere failure to account for funds. *See Lewis,* 97 F.3d at 1185; *Gonzales v. Raiser Construction Co. (In re Gonzales),* 22 B.R. 58 (9th Cir. BAP 1982); *Marderosian,* 186 B.R. at 346; *Ducey v. Doherty (In re Ducey),* 160 B.R. 465 (Bankr.D.N.H.1993); *Orem Postal Credit Union v. Twitchell (In re Twitchell),* 72 B.R. 431, 436 (Bankr.D.Utah) *rev'd on other grounds* 91 B.R. 961 (D.Utah 1988). These courts have reasoned that if nondischargeable debts must arise from some culpable conduct, the requisite culpability or fault of the debtor arises from the special legal status of a fiduciary. *Martin v. Fidelity and Deposit Co. of Maryland (In re Martin),* 161 B.R. 672, 680 (9th Cir. BAP 1993) (Perris, J., dissenting in part), *overruled by, Lewis v. Scott (In re Lewis),* 97 F.3d 1182 (9th Cir.1996). Since fiduciary capacity requires trust or confidence, the failure to account for funds results in a breach of this trust or confidence. *Twitchell,* 72 B.R. at 436. Therefore, precluding the discharge of debts arising from the breach of such trust relationships would be consistent with the policy of the Bankruptcy Code to provide a fresh start only to honest debtors.

In a recent case decided in this district, Chief Judge Kenner rejected the position that any inability of a fiduciary to account for funds would establish a defalcation, and instead held that a default could not constitute a defalcation without some degree of fault. *Stowe v. Bologna (In re Bologna),* 206 B.R. 628 (Bankr.D.Mass.1997). In *Bologna,* the court surveyed numerous court decisions and found that although cases diverged greatly as to the intent required of the debtor to constitute defalcation, the great majority found some degree of fault to be necessary. *Id.* at 633–35. Judge Kenner opined that determining defalcation to require some degree of fault by the debtor was more consistent with the Bankruptcy Code's basic principle to provide a fresh start to honest debtors. *Id.* at 635. By construing the exception to discharge under § 523(a)(4) narrowly, the court concluded, discharge would be denied only to blameworthy debtors. *Id.*

This Court is persuaded by Judge Kenner's interpretation of the term defalcation under § 523(a)(4). Requiring a certain degree of fault by the debtor is more consistent with Congress' intent to narrowly construe

exceptions to discharge. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). The purpose of section 523 was to remove from the debtor's capacity the ability to discharge certain debts arising from practices Congress deemed so pernicious that bankruptcy should not be able to insulate the debtor from their payment. *Stackhouse v. Hudson (In re Hudson),* 859 F.2d 1418, 1423 (9th Cir.1988); *see also Century 21 Balfour Real Estate v. Menna (In re Menna),* 16 F.3d 7, 9 (1st Cir.1994). And, frankly, Judge Kenner's interpretation is more consistent with the views expressed by this Court with respect to § 523(a)(6). In the *Maltais* case, this Court rejected technical imputed liability principles as inconsistent with both equity and the responsibility of the court to distinguish between the honest and the dishonest debtor when determining a question of non-dischargeability. *Maltais,* 202 B.R. at 812. Moreover, in *Printy v. Dean Witter Reynolds, Inc.,* 110 F.3d 853 (1st Cir.1997) (citing this Court's decision of *Brzys v. Lubanski (In re Lubanski),* 186 B.R. 160, 165 (Bankr.D.Mass.1995)), the First Circuit adopted a definition of "willful and malicious" which included the condition that the debtor be in "conscious disregard of duty" before nondischargeability would fix to the claim against the debtor. *Printy,* 110 F.3d at 859. Given these well-recognized principles, it would be imprudent to read "defalcation" as an action or failure to act without the benefit of context. At the very least, an intentional breach of duty should be required. Therefore, this Court will no longer follow the definition it proffered in *Christian* and will follow *Bologna* and those cases which hold that some degree of culpability is required to constitute a defalcation within the meaning of § 523(a)(4).[4]

This Court is unable to find defalcation in the current record. The definition of conversion under Arizona state law requires only that, with respect to the subject property, the actor intended to exercise control which interfered with the control right of another. "The intent required ... is not necessarily a matter of conscious wrong-doing." *Sterling Boat Co., Inc. v. Arizona Marine, Inc.,* 134 Ariz. 55, 653 P.2d 703, 706 (Ct.App.1982) (citing *Prosser, Torts* § 15, p. 83 (4th ed.1971)); *Focal Point, Inc.,* 746 P.2d at 490 n. 3 ("Good faith belief or intention is no defense to a conversion action in Arizona."). "Neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are the gist of the action." *Scott v. Allstate Ins. Co.,* 27 Ariz.App. 236, 553 P.2d 1221, 1225 (Ct.App.1975). "The gravamen of the tort is therefore the wrongful interference with another's ownership or right of possession." *Sterling Boat,* 134 Ariz. 55, 653 P.2d 703, 706 (Ct.App.1982) (quoting *Autoville, Inc. v. Friedman,* 20 Ariz.App. 89, 510 P.2d 400 (Ct.App.1973)). Since the tort of conversion under Arizona law does not require that the actor knew or had reason to know that its actions were wrongful or that the actor was otherwise at fault, the Plaintiffs cannot employ the doctrine of collateral estoppel to establish the Debtors' defalcation for the purposes of § 523(a)(4). And nothing in either of the cross motions would assist the Court in finding summary judgment on this issue for any other reason. The Venditti Affidavit provides a confusing history with respect to the patent. Notwithstanding the absence of an affidavit from the Debtors, the affidavit submitted by the Plaintiff fails to clearly set forth who owned the patent and when, the circumstances of its transfer and why. For a motion for summary judgment to prevail, it is not enough that the moving party show the absence of a genuine issue of material fact. The moving party must also show its entitlement to judgment as a matter of law. Fed.R.Bankr.P. 7056; Fed.R.Civ.P. 56(c); *see also Aero–Fastener, Inc. v. Sierracin Corp. (In re Aero–Fastener, Inc.),* 177 B.R. 120, 135 (Bankr.D.Mass.1994).

---

4. Noteworthy is that many cases which hold that a mere failure to account for funds constitutes a defalcation, contain facts which indicate some degree of culpability greater than mere negligence. *See Martin,* 161 B.R. at 678. For example, in *Marderosian,* 186 B.R. at 346, an insurance agent disbursed loan proceeds to someone other than the mortgagee. The court found that although defalcation could be found in mere failure to account for funds, in that case, "innocent mistake [was] not even remotely available as a defense." *Id.; see also Woodworking Enterprises, Inc. v. Baird (In re Baird),* 114 B.R. 198 (9th Cir. BAP 1990); *Gonzales,* 22 B.R. at 59 (contractors diverted funds that were held in statutory trust for one subcontractor to other subcontractors). *Martin,* 161 B.R. at 678.

### D. Section 523(a)(6)

11 U.S.C. § 523(a)(6) provides that "any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity" is to be excepted from discharge. The First Circuit recently defined the term "willful and malicious" to mean "an act intentionally committed, without just cause or excuse, in conscious disregard of one's duty and that necessarily produces an injury." *Printy*, 110 F.3d at 859 (citing *Lubanski*, 186 B.R. at 165). The court in *Printy* further concluded that "[a]n injury inflicted willfully and with malice under § 523(a)(6) is one inflicted intentionally and deliberately, and either with the intent to cause the harm complained of, or in circumstances in which the harm was certain or almost certain to result from the debtor's act." *Id.; see Small v. Bottone (In re Bottone)*, 209 B.R. 257, 265 (Bankr.D.Mass.1997).

The Plaintiff argues that the jury's determination that the Debtors were liable for the tort of conversion necessitates a finding that the Debtors' actions were both intentional and wrongful, and as a result "willful and malicious" within the meaning of § 523(a)(6). Although the Arizona jury found that the Plaintiff suffered an "injury" as a result of the Debtors' actions, only injuries that follow from a debtor's individual willful and malicious acts are to be excepted from discharge. *Dahlgren & Co., Inc. v. Lacina (In re Lacina)*, 162 B.R. 267, 274 (Bankr.D.N.D.1993). The Supreme Court has recognized that a "willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances." *Davis*, 293 U.S. at 332, 55 S.Ct. at 153. In *Davis*, the Court noted that "[t]here may be an honest, but mistaken belief engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a willful and malicious one." *Id.*

The allegations in the Plaintiff's motion do not fulfill the "willful and malicious" requirement as set forth in *Printy*. Certainly, nothing in the Arizona state judgment sheds any light on the Debtors' intent as required to be shown here. Therefore, the doctrine of col- lateral estoppel cannot be employed to establish the nondischargeability of the Plaintiff's claim under § 523(a)(6). And so also for the Venditti Affidavit, which coldly recites a chronology of events without providing information sufficient for this Court to find, as a matter of law, that the Debtors' actions were willful and malicious.

### III. *Conclusion*

For the foregoing reasons, it is deemed established that the relationship of Mr. Sullivan to the Plaintiff was that of a fiduciary, and that the result of the actions of the Debtors was to cause the Company injury. For all other purposes, each of the cross motions for summary judgment must be denied. A new pre-trial conference will be set to establish discovery deadlines and a trial date.

A separate order will issue in conformity with this Memorandum.