In the Matter of Harvey GOLDBERG, Debtor.

CHICAGO TITLE INSURANCE COMPANY, a corporation of the State of Missouri, Plaintiff,

v.

Harvey GOLDBERG, Defendant.

Adv. No. 80–0593.

United States Bankruptcy Court, D. New Jersey.

April 9, 1981.

Riker, Danzig, Scherer & Hyland by Dennis J. O'Grady and Joseph Tato, Shanley & Fisher by Dennis Terrell, Newark, N. J., for plaintiff Chicago Title Ins. Co.

Arthur Kamine, Paterson, N. J., for defendant-debtor.

## OPINION

VINCENT J. COMMISA, Bankruptcy Judge.

On September 26, 1980 an involuntary petition praying that an order for relief be entered against Harvey Goldberg under Chapter 7 of the Bankruptcy Code was filed by the Lawyers Title Insurance Corporation (hereinafter L.T.I.C.), the Commonwealth Title Insurance Company, and the Chicago Title Insurance Company (hereinafter C.T.I. C.), the plaintiff herein.

The involuntary petition recites that within the 120 days preceding the filing of the petition, a custodian was appointed for and has taken possession of substantially all of the property of the debtor; such custodian having been appointed by order of the Superior Court of New Jersey, Chancery Division, Passaic County on or about May 30, 1980. Subsequently an interim trustee was appointed by the United States Trustee.

In a complaint filed on the same day, C.T.I.C. seeks an order declaring the debtor's debt non-dischargeable pursuant to § 523(a)(4) of the Bankruptcy Code, as debts incurred by "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny", and for relief from the automatic stay of § 362 of the Code. No answer has been filed by the debtor.

Hearings were held in this matter on October 29, 30 and 31, 1980. Counsel for the debtor appeared only at the hearing held on October 30, 1980; he offered no witnesses and participated in the hearing of this matter only to the extent of explaining the invocation of the Fifth Amendment by the debtor. Counsel for Mr. Goldberg informed the Court that there are ongoing criminal charges, and ongoing investigations pending against the debtor, which arise out of the circumstances and incidents involved in the bankruptcy litigation and that, therefore, his client would refuse to answer, and would invoke his Fifth Amendment rights.

Based upon representations of defendant's counsel, the Court declined to direct the debtor to answer.

At the outset, this Court observes that, notwithstanding the election by the debtor to rely on his Fifth Amendment rights against self-incrimination, and thereby refuse to answer any and all of the questions posed by the plaintiff at the trial of the instant matter, this Court is not foreclosed from reaching a decision of the merits. The Court declined to compel the debtor to testify at the trial of the instant matter, but the refusal of the debtor to testify does not constitute evidence in favor of the debtor, or permit the debtor to avoid the operation of Rule 8(d), F.R.Civ.P. *Kimm v. Rosenberg*, 363 U.S. 405, 80 S.Ct. 1139, 4 L.Ed.2d 1299 (1960); *Sahn v. Pagano*, 302 F.2d 629 (2d Cir.), *cert. den.* 371 U.S. 819, 83 S.Ct. 34, 9 L.Ed.2d 59 (1962); *In re Sterling-Harris Ford, Inc.*, 315 F.2d 277 (7th Cir.), *cert. den. Silverstein v. Phelps*, 375 U.S. 814, 84 S.Ct. 46, 11 L.Ed.2d 50 (1963); *Gellis v. Casey*, 338 F.Supp. 651 (S.D.N.Y. 1972); 8 Wright & Miller *Federal Practice and Procedure: Civil*, § 2018.

The Court draws no inference from the debtor's use of his privilege against self-incrimination. The decision reached herein rests solely upon the uncontradicted averments in plaintiff's complaint and the evidence adduced at trial.

The complaint alleges, *inter alia*, that defendant Goldberg, an attorney at law of

New Jersey, misappropriated to his own use in excess of $170,000.00, which had been advanced to him by C.T.I.C.'s insured mortgagees, for purposes of discharging prior mortgages of record. Further, it is averred that C.T.I.C. has paid in excess of $170,000.00 in satisfaction of the claims of five defrauded mortgagees by advancing funds to the prior mortgage lienors, thereby enabling C.T.I.C.'s insured mortgagees to obtain valid first liens on the subject properties. These allegations have not been answered, Bankruptcy Rule 712, accordingly pursuant to F.R.Civ.P. 8(d) and Bankruptcy Rule 708, they are deemed admitted. Moreover, the record is replete with uncontradicted testimony which sustains the above allegations.

Section 523(a)(4) provides:

§ 523. Exceptions to Discharge.

(a) A discharge under § 727 . . . of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

The defendant has engaged in fraudulent conduct. At various real estate closings, he was entrusted with funds which were to be used by him to pay off prior mortgages in order that the purchaser and lender would have title as stated in the title insurance contracts and commitments. Instead of using the funds for their intended purpose, the defendant utilized them for his own profit and use. As a result, the prior mortgages remained outstanding, contrary to the title insurance policies issued to the purchasers and lenders. Pursuant to these contracts, C.T.I.C. paid in excess of $170,000.00 of its own funds to satisfy the prior mortgages and place title in the state required by the title insurance policies. The losses sustained by C.T.I.C. are set forth below.

During May 1980 the defendant represented George Azares and Loida Azares at the closing of title for property commonly known as 12A Lake Shore Drive, Lake Hiawatha, New Jersey. The mortgagee, a Margaretten & Co., Inc. advanced funds to Goldberg with instructions to pay off an existing prior mortgage on the subject realty held by the City Federal Savings and Loan Association. In fraud upon his clients, the defendant did not pay off the mortgage held by City Federal Savings and Loan Association but instead misappropriated these funds for his own profit and use. Pursuant to the mortgagee's policy of title insurance with the plaintiff herein, C.T.I.C. paid to City Federal Savings and Loan $25,232.41, thereby satisfying its insurance obligations to the Azares and Margaretten.

The defendant represented Michael and Janice Carracozza at the closing of title of 3 Stacey Court, Parsippany-Troy Hills, New Jersey, which occurred during May 1980. The sum of $68,000.00 was advanced by the mortgage lender, Carteret Savings and Loan Association, to the defendant for the purpose of satisfying a mortgage on the above premises held by Valley National Bank. In fraud of his clients and the plaintiff herein, the defendant failed to use the funds for their intended purpose, but instead misappropriated them to his own use. Pursuant to its title insurance policies with the Carracozzas and Carteret, C.T.I.C. paid $68,000.00 to Valley National Bank in satisfaction of the mortgage on the subject property.

During May 1980 defendant Goldberg represented John and Joan Buchanan at the closing of title of 292 Stewart Avenue, Kearny, New Jersey. Eastern American Mortgage Co., the mortgagee, advanced funds to the defendant to satisfy the first mortgage on the premises held by the Kearny Federal Savings & Loan Association. The defendant did not satisfy the Kearny mortgage, but misappropriated the funds to his own use. C.T.I.C., in accordance with its title insurance policies with the Buchanans and Eastern American Mortgage Co., paid $17,332.39 to Kearny to satisfy and discharge the first mortgage. Moreover, C.T.I.C. paid the sum of $5,555.91 to Eastern American Mortgage Co., its insured, in satisfaction of closing fees, expenses and escrow payments it was to receive at the closing, but which were misappropriated by the defendant.

The defendant represented Frank and Joyce Zalfino at the closing of title of 12 Van Riper Avenue, Pequannock, New Jersey. The mortgagee, Clifton Savings and Loan Association, advanced funds to the defendant with instructions to use the appropriate amount to satisfy a mortgage on the above premises held by the Serial Federal Savings and Loan Association. The defendant has failed to satisfy the mortgage held by Serial, but misappropriated these funds for his own use. Pursuant to its title insurance policies with the Zalfinos and Clifton Savings and Loan Association, C.T.I.C. paid the sum of $27,581.51 to Serial Federal Savings & Loan Association in satisfaction of its mortgage on the subject premises.

The defendant represented Michael White at the closing of title of 116 Humphrey Street, Englewood, New Jersey, during May 1980. The mortgagee, First United Mortgage Corp., advanced funds to the defendant for the purpose of satisfying a mortgage on the above premises, held by the Commercial Mortgage Company, and to Fidelity Bond and Mortgage Company, agent for the United States, Housing and Urban Development (HUD), holder of a second mortgage on the above premises. The defendant failed to pay the mortgages held by the Commercial Mortgage Company and HUD, but misappropriated these funds for his own use. Pursuant to its title insurance obligations to its insureds, Michael White and First United Mortgage Corp., C.T.I.C. paid the sums of $20,419.96 to Commercial Mortgage Co. and $7,037.00 to Fidelity Bond and Mortgage Co.

■ There can be no doubt that the conduct of the debtor herein involves intentional wrong, thus fraud has been committed by defendant Goldberg. *Neal v. Clark*, 95 U.S. 704, 24 L.Ed. 586 (1877); 3 *Collier on Bankruptcy* (15th Ed. 1980) ¶ 523.-14(1)(a), p. 523.14.

The attorney-client relationship is a fiduciary relationship. *In re Loring*, 73 N.J. 282, 374 A.2d 466 (1973). Further, "All fiduciaries are held to a duty of fairness, good faith and fidelity, but an attorney is held to an even higher degree of responsibility in these matters than is required of all others". *In re Honig*, 10 N.J. 74, 78, 89 A.2d 411 (1952).

The fiduciary obligation of the lawyer applies to persons who, although not strictly clients, he has or should have reason to believe rely on him. *In re Hurd*, 69 N.J. 316, 330, 354 A.2d 78 (1976); *In re Gavel*, 22 N.J. 248, 264, 125 A.2d 696 (1956); *In re Genser*, 15 N.J. 600, 606, 105 A.2d 829 (1954). Goldberg knew, or should have known, that C.T.I.C. relied on him to pay off the existing mortgages in order that the mortgagee insured by C.T.I.C. would occupy the position of a first lienor.

The defendant applied for, and received, the designation of "approved attorney" of the C.T.I.C., or its predecessor, in or about 1960. The approved attorney performs various services for, and with the co-operation of the title company. He orders a title search, attempts to dispose of the exceptions noted in the search by obtaining affidavits or pay-off letters. The approved attorney usually attends the closing, makes up the commitment, obtains all of the proofs, forwards the proofs to C.T.I.C., records the documents in order that C.T.I.C. may issue the title insurance policy, and obtains checks for proper disbursement and cancels prior mortgages. The testimony was unequivocal that an approved attorney for C.T.I.C. performs these functions and that both C.T.I.C. and the lending bank expect that the approved attorney will perform the above mentioned functions at the real estate closing.

There can be no question but that Goldberg knew that C.T.I.C. relied on him to pay off existing mortgages. He was an approved attorney of C.T.I.C. since 1960. He knew, or should have known, the nature and purpose of a real property settlement. He either read and was familiar with all of the documents necessary to obtain title insurance for his clients the purchasers, or should have been so prepared to obtain the title insurance for his clients. An attorney's duty to his client requires him to exercise the knowledge, skill and ability

ordinarily possessed and exercised by members of the legal profession similarly situated. He is bound to exercise a reasonable degree of care and prudence, having reference to the character of the service he undertakes to perform. *Hoppe v. Ranzini*, 158 N.J.Super. 158, 163, 385 A.2d 913 (App. Div.1978). Accordingly, the debtor, in order to adequately prepare for the respective closings and to satisfy his professional obligation to his clients, the purchasers, was made aware that C.T.I.C. was relying on him to cancel the prior mortgages.

Here, the debtor without question was a fiduciary of C.T.I.C. and, while acting in his fiduciary capacity, failed to pay off the existing mortgages in the above noted transactions. He knowingly diverted the monies placed in trust with him to his own use. The fraud he committed is actionable under § 523(a)(4) of the Bankruptcy Code, and it is the determination of this Court that the debt to C.T.I.C. is non-dischargeable.

## RELIEF FROM THE AUTOMATIC STAY

 Plaintiff, as the basis for relief from the automatic stay, asserts that the debt due and owing to it by the debtor is a debt incurred by fraud. The Court has above decided that the debtor did commit fraud, and that as a result thereof, C.T.I.C. became liable for, and did pay, in excess of $170,000.00 of claims on various title insurance policies.

Section 362(d) of the Bankruptcy Code provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—
(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization.

Section 362(g) of the Code provides:

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
(1) the party requesting such relief has the burden of proof of the issue of the debtor's equity in the property; and
(2) the party opposing such relief has the burden of proof of all other issues.

The Code requires a showing of cause by the party requesting relief under § 362(d)(1), and then in § 362(g) places the burden of proof (risk of persuasion) on the party opposing relief for all issues other than that of the debtor's equity in the property. 2 *Collier on Bankruptcy* (15th ed. 1980), ¶ 362.10, p. 362–58.[1] (emphasis added).

To obtain relief from the stay under subsection (d)(1), some cause must be shown why relief from the stay should be granted. Such cause may be established by proof that the party seeking relief from the stay does not have adequate protection of its interest in the property. *In re A. L. S., Inc.*, 3 B.R. 107 (Bkrtcy.E.D.Pa., 1980).

Plaintiff has advanced no cause, other than to say that the debt it is owed by defendant has been obtained by fraud, in support of its request for relief from the automatic stay. By order of this Court, the United States Trustee has appointed an interim trustee in this bankruptcy proceeding. Thus, the plaintiff herein, as an unsecured creditor, is protected from dissipation of the estate. The plaintiff of course has no collateral which, if the stay were lifted, it could foreclose upon and liquidate, and

1. Section 362(d)(2), "with respect to a stay of an act against property" is inapplicable to the instant action. The legislative history makes clear that this section is intended to solve the problem of real property mortgage foreclosures of property where the bankruptcy petition is filed on the eve of foreclosure. 124 Cong. Rec.H. 11,092–3 (Sept. 28, 1978), 517, 409 (Oct. 6, 1978).

thereby prevent a decline in value of such collateral.

It is noted that the plaintiff herein is one of the creditors that joined in the involuntary petition which commenced this bankruptcy proceeding. *In re Beaucrest Realty Associates*, 1 C.B.C.2d 1095, 4 B.R. 166 (Bkrtcy.E.D.N.Y.1980), the Court observed:

"This Court must assume that the Petitioning Creditors desired the protection offered by the automatic stay under section 362, and invoked the jurisdiction and power of this Court for that purpose and are therefore now equitably estopped from seeking its termination. (at 1097).

Accordingly, plaintiff's request for relief from the automatic stay is denied.

### PUNITIVE DAMAGES

■ Punitive damages may be allowed for the violation of a fiduciary duty. *Brown v. Coates*, 253 F.2d 36 (D.C.Cir.1958); *Security Corp. v. Lehman Associates, Inc.*, 108 N.J.Super. 137, 260 A.2d 248 (App.Div. 1970); *Sandler v. Lawn-a-Mat Chem. & Equip. Corp.*, 141 N.J.Super. 437, 358 A.2d 805 (App.Div.), *cert. den.* 71 N.J. 503, 366 A.2d 658 (1976).

In order to recover punitive damages, a plaintiff must establish actual malice, which is nothing more or less than intentional wrongdoing, an evil minded act or an act accompanied by a wanton and willful disregard of the rights of another. *Sandler v. Lawn-a-Mat Chem. & Equip. Corp., supra.* Herein, there is certainly intentional wrongdoing accompanied by a wanton or willful disregard of the rights of others.

Punitive damages are given to the plaintiff over and above full compensation for his injuries, for the purpose of punishing the defendant, of teaching him not to do it again, and of deterring others from following his example. Prosser, *Law of Torts*, (4th ed. 1971), p. 9.

■ It is noted that an award of punitive damages would not injure the unsecured creditors of the debtor, as § 726 of the Bankruptcy Code provides that, in order of distribution claims for punitive damages come after unsecured claims have been satisfied. Moreover, the trustee may avoid a lien which secures a claim for punitive damages. 4 *Collier on Bankruptcy*, (15th Ed. 1980), ¶ 724.02, p. 724–3; ¶ 726.02(4), p. 726–7.

"[A]lthough punitive damages are not a favorite in law and are to be allowed only within narrow limits, the allowance of such damages inherently involves an evaluation of the conduct in question, the wisdom of some form of pecuniary punishment and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted are of necessity within the discretion of the trier of fact." *Fisher v. Volz*, 496 F.2d 333, 347 (3rd Cir. 1974).

Similarly,

In New Jersey, punitive damages are awarded in the sound discretion of the trier of fact: upon a theory of punishment ... [after taking] into consideration all of the circumstances surrounding the particular occurrence including the nature of the wrongdoing, the extent of the harm inflicted, the intent of the party committing the act, the wealth of the perpetrator, as well as any mitigating circumstances which may operate to reduce the amount of damages. *Leimgrubber v. Clairidge Associates, Ltd.*, 73 N.J. 450, 456, 375 A.2d 652, 654–655 (1977). Moreover, as indicated by the language in *Leimgrubber*, above: Punitive or exemplary damages have traditionally been reserved for civil wrongs characterized as torts.

*Chatlos Systems, Inc. v. National Cash Register Corp.*, 479 F.Supp. 738, 749 (D.N.J.1979).

■ In view of the circumstances surrounding this case and, more particularly the denial of the right to discharge together with the apparent insolvent condition of the debtor, no useful purpose would be served by imposing punitive damages in this matter.

Submit an order in accordance with the above Opinion.