In re George A. MARDEROSIAN, Debtor.

AMERICAN TITLE INSURANCE
CO., Plaintiff,

v.

George A. MARDEROSIAN, Defendant.

Bankruptcy No. 94–10042.
Adv. No. 94–1089.

United States Bankruptcy Court,
D. Rhode Island.

Sept. 22, 1995.

George A. Marderosian, East Providence, RI, pro se.

Stephen P. Sheehan, Wistow & Barylick Incorporated, Providence, RI, for plaintiff.

## DECISION AND ORDER DETERMINING: (1) THAT THERE IS A DEBT; and (2) THAT SAID DEBT IS NONDISCHARGEABLE

ARTHUR N. VOTOLATO, Bankruptcy Judge.

Heard on the Complaint of American Title Insurance Company ("American Title") to determine the dischargeability of a debt allegedly owed by the Debtor, George A. Marderosian, under 11 U.S.C. § 523(a)(4). American Title contends that Marderosian, as its agent, engaged in conduct that: (1) constituted defalcation by a fiduciary; and (2) resulted in the exposure of American Title to a lawsuit by a third party. Although it was ultimately judicially determined that American Title was not required to pay damages to the third party claimant, it nevertheless contends that Marderosian is liable for the cost of legal services required to defend the third party claim, and that said legal expenses should be declared nondischargeable. Marderosian admits to the defalcation, but argues, in the alternative, that: (1) he is not liable for American Title's legal expenses; or (2) if he is so obligated, any such award is dischargeable in this bankruptcy.

## BACKGROUND

The parties have stipulated to the following facts: In October 1986 George E. Marderosian, then a licensed attorney in the State of Rhode Island, entered into an agreement with American Title by which Marderosian was authorized to act as a title policy writing agent. While serving in that capacity, Marderosian (and his firm) also represented the interests of several real estate developers who were converting resort-rental apartments into "Motel Condominiums," and then promoting the sale of the converted units to separate investors. The First Circuit Court of Appeals summed up the scheme as follows:

> Buyers were promised a deal where no money down was required; guaranteed they could not lose money; and assured that they would receive a five percent return on the initial purchase price in five years. Many took "this deal of a lifetime" and all learned that the deal was too good to be true.
>
> Dean Street Development Company ("Dean Street"), a real estate development operation, would purchase already existing operating motels located in Rhode Island.... It would then condominimize the motel, selling market title in each separate unit with shared interest in the common areas.

To procure purchasers of these units, Dean Street promised potential buyers that they did not have to make a down payment. Dean Street wired money for the down payment into the buyers' bank accounts prior to closing. At the closing the buyer would return the down payment to Dean Street, receive a credit toward the purchase price, and execute a note in favor of East West, an originator and servicer of mortgage loans. Usually the buyer would also execute a second mortgage in favor of Dean Street which would later be forgiven without repayment. The closings were held at the law office of George Marderosian in Providence, Rhode Island. Marderosian, an authorized agent of American Title, also acted as attorney for the buyer

and seller and as settlement agent. Prior to the transaction the buyers signed a document consenting to the apparent conflict of interest by Marderosian at the closing. After the transaction the buyers would lease back the unit to a subsidiary of Dean Street which would rent out the unit. From those rentals Dean Street was supposed to pay the buyers' mortgage payments.

*American Title Ins. Co. v. East West Fin. Corp.,* 959 F.2d 345, 346 (1st Cir.1992) (*"American Title I"*).

From August 1987 through September 1988, Marderosian issued numerous title insurance policies covering four of the conversion projects,[1] while simultaneously acting as the settlement agent for the seller-developers. Title policies were issued to purchasers of the individual units, and to Bay Loan and Investment Bank (hereafter "Bay Loan") and East West Financial Corporation (hereafter "East West"), which provided the financing for the individual purchasers. The policies insured both the purchasers and the lender against damage or loss arising from defects in title, but none of the policies referenced the pre-existing mortgages, or declared them as exempt from coverage. Marderosian acknowledges his obligation to use the loan proceeds to pay and to discharge the prior mortgages, and that he illegally and covertly diverted the loan proceeds to the seller, Dean Street Development Co., after retaining substantial commissions for himself. Pre-existing mortgages on at least eighty parcels were not paid, and when the scheme was finally uncovered, Bay Loan filed a notice of claim for approximately $18,000,000 with its title insurance carrier, American Title.

American Title sought a declaratory judgment in the United States District Court for the District of Rhode Island to relieve it from liability, based upon the fraud of Marderosian, Dean Street Development, etc. Bay Loan and East West counterclaimed for breach of contract and bad faith refusal of coverage by American Title. *See American Title I,* 959 F.2d at 345. After a bench trial, the District Court entered judgment in favor of East West and Bay Loan, but dismissed their damage claim as "premature." The Court of Appeals for the First Circuit remanded the case for a new trial on the ground that the District Court erred in allocating the burden of proof. *Id.* On remand, the District Court again ruled against American Title on the merits, but dismissed two of the counterclaims without prejudice on the ground that the claims were "premature." *See American Title Ins. Co. v. East West Fin. Corp.,* 16 F.3d 449 (1st Cir.1994) (*"American Title II"*). On appeal the second time, the Court of Appeals again affirmed the District Court's finding that American Title was liable under its contract, but this time dismissed the damage claims *with prejudice,* again, due to Bay Loan's failure to prove damages. *Id.*

American Title now seeks to recover from Marderosian, on indemnity principles, the legal expenses it incurred in the litigation with Bay Loan, arguing that, but for Marderosian's fraud and/or defalcation, said expense would not have been incurred. American Title also requests that any award against Marderosian be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(4), which exempts from discharge debts for fraud or defalcation while acting in a fiduciary capacity.

### DISCUSSION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. *Is Marderosian Liable to American Title for Reimbursement of its Attorneys' fees?*

■ In this case there is no contractual right to indemnity but under Rhode Island common law, indemnification may be based on equity principles. *See Fish v. Burns Bros. Donut Shop, Inc.,* 617 A.2d 874, 875 (R.I.1992); *Wilson v. Krasnoff,* 560 A.2d 335, 341 (R.I.1989). Equitable indemnification is premised on the proposition that a party should not suffer a loss incurred by exposure

---

1. Marderosian issued 17 title policies covering the sale of units in the Charlestown Motel Condominium, 37 policies on the sale of units in the Hillside Motel Condominium, 24 policies for units in the Sand Castle Motel Condominium, and 2 policies for units sold in the Sandpiper Motel Condominium.

to liability caused by the wrongful acts of another. *See Fish,* 617 A.2d at 875; *Muldowney v. Weatherking Products, Inc.,* 509 A.2d 441, 443 (R.I.1986).

> Everyone is deemed responsible for the consequences of his or her own acts. This responsibility extends not only to the person directly injured but also to the one indirectly harmed by being held liable by operation of law.... If another person has been compelled to pay damages that should have been paid by the wrongdoer, the latter becomes liable to the former.

*Id.* (citations omitted).

■ Under *Muldowney,* three elements must be shown to sustain an equitable indemnification claim. "First, the party seeking indemnity must be liable to a third party. Second, the prospective indemnitor must also be liable to the third party. Third, as between the prospective indemnitee and indemnitor, the obligation ought to be discharged by the indemnitor." *Id.*

■ The facts in this proceeding fit squarely within the *Muldowney* test. The initial inquiry addresses whether American Title was liable to Bay Loan under its title insurance policies. This question was extensively litigated on two occasions before the United States District Court for the District of Rhode Island, and twice by the First Circuit Court of Appeals. *See American Title I,* 959 F.2d 349; *American Title II,* 16 F.3d 449. After a second trial the District Court held, and the Court of Appeals affirmed, that American Title was liable under Bay Loan's title insurance policies. *American Title II,* 16 F.3d at 461. Notwithstanding judgment on the merits against American Title, the District Court dismissed, without prejudice, all but one of Bay Loan's claims on the ground that they were premature. *Id.* at 459. On review, the Court of Appeals dismissed Bay Loan's claim for money damages, this time *with prejudice,* citing as cause its failure to establish damages at *both* trials. *Id.*

The denial of Bay Loan's damage claim, *with prejudice,* is not fatal to American Title's right to indemnity for its related legal expenses. The holding in *Muldowney* requires only a finding of liability, and does not require an award of damages. Twice, Bay Loan established American Title's liability under the title insurance policies, but also failed, *twice,* to establish damages. The fact that American Title, however fortuitously, dodged a huge (damages) bullet does not alter the legal principles applicable to this indemnity action.

The second element required to establish Marderosian's liability to American Title is easily satisfied. Marderosian represented to Bay Loan that, from the loan proceeds he would pay off the existing encumbrances, so that Bay Loan would be the senior mortgagee. From Bay Loan's point of view this agreement of course was indispensable, and the venture could not have taken place had Marderosian not given these assurances. Clearly, therefore, Bay Loan had a right of action against Marderosian.

The third element is satisfied "when a potential indemnitor is at fault and the prospective indemnitee is blameless." *Wilson,* 560 A.2d at 341. In the present case, Marderosian's conduct was plainly culpable, and the litigation which ensued between American Title and Bay Loan was solely derivative of his actions. American Title's exposure to liability was a direct and proximate result of Marderosian's misdeeds.

In addition to its compensatory damages, "an indemnitee may recover attorney's fees and costs incurred in defense of the liability indemnified against from the indemnitor." *Fleck v. KDI Sylvan Pools, Inc.,* 981 F.2d 107, 117 (3d Cir.1992), *cert. denied, Doughboy Recreational Inc. v. Fleck,* — U.S. —, 113 S.Ct. 1645, 123 L.Ed.2d 267 (1993). Although under the "American Rule" attorney's fees are generally not recoverable by the prevailing party,[2] the exception for an indemnitee is widely accepted. *SPM Corp. v. M/V Ming Moon,* 22 F.3d 523, 526 (3d Cir.1994). *See e.g., Pender v. Skillcraft Indus., Inc.,* 358

---

**2.** *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

So.2d 45, 47 (Fla.App.1978); *Autrey v. Trkla,* 350 N.W.2d 409, 413 (Minn.App.1984).[3]

In Oregon, from which the Rhode Island Supreme Court adopted the test in *Muldowney,* attorneys' fees incurred in the third party litigation are recoverable under a common law indemnity theory, where "a tortious act makes litigation necessary, ... requir[ing] a party to act to protect his interests by bringing or defending an action against a third party." *C.I.T. Group/Equip. Fin., Inc. v. Young,* 99 Or.App. 270, 782 P.2d 169, 170 (1989). This principle is also found in the Restatement of Torts which states:

> § 914   Expense of Litigation
> 1) The damages in a tort action do not ordinarily include compensation for attorney fees or other expenses of the litigation.
> (2) One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.

Restatement (Second) of Torts § 914 (1979). A similar rule is followed in Minnesota, where an attorney was found liable for expenses incurred by his client for litigation caused by the first attorney's negligence. *Autrey,* 350 N.W.2d at 413.

That American Title escaped liability to Bay Loan for actual damages does not affect the remainder of its claim against Marderosian. Courts have awarded attorneys' fees where the indemnitee successfully defends the underlying third party claim and is found to be not liable for damages, *Pender,* 358 So.2d at 47, and attorneys' fees may be recovered from the indemnitor even where the indemnitee settles the original claim with the third party. *Maseda v. Honda Motor Co., Ltd.,* 861 F.2d 1248, 1256 (11th Cir.1988). The rationale for each of these rulings is that a party "would in effect be penalized for successfully defending itself in the suit if it were required to bear its own costs of litigation." *Id.* at 1257.

Under the facts of the present case, we need not go as far as some courts have. Unlike the indemnitees in *Pender* and *Maseda,* American Title was found to be liable to Bay Loan. If Bay Loan or East West Financial had prevailed on the merits, Marderosian would be liable to American Title for all of those damages as well. Thus, denying American Title its attorney fees on the ground that it was not required to pay actual damages, notwithstanding Bay Loan's success in establishing liability, would be antithetic to the principles underlying equitable indemnity, and contrary to sound policy considerations.

B.  *Is American Title's claim for legal expenses dischargeable in Marderosian's Bankruptcy?*

In light of our ruling on issue A, above, we must next determine whether American Title's claim for legal expenses is dischargeable under § 523(a) of the Bankruptcy Code, and the authority concerning this issue is mixed. One view allows the debtor to discharge court-awarded attorneys' fees even where the primary debt is nondischargeable, unless there is statutory authority or a contractual basis for such an award. *See In re Cheatham,* 44 B.R. 4, 8 (Bankr.N.D.Ala.1984); *Beard v. Beard (In re Beard),* 5 B.C.D. 680 (Bankr.M.D.Tenn.1979).

■ Most courts have taken the opposite position, however, holding that where the underlying judgment debt is nondischargeable in bankruptcy pursuant to § 523(a), associated attorneys' fees are likewise nondischargeable. *In re McGuffey,* 145 B.R. 582, 597 (Bankr.N.D.Ill.1992). Supportive of this principle, an award of attorneys' fees has been characterized as compensation to the plaintiff for losses sustained as a direct consequence of the debtor's actions that initially gave rise to the underlying nondischargeable debt. *In re Kwiat,* 62 B.R. 818, 823 (Bankr. D.Mass.1986), *modified,* 81 B.R. 184, 191 n. 16 (D.Mass.1987) ("[T]he Bankruptcy Court did not err in finding that legal fees and

---

**3.** This issue of whether an indemnitee may recover legal expenses incurred in an action against a third party appears to be one of first impression, however, in the State of Rhode Island. Therefore, we must look to other jurisdictions for guidance.

costs awarded in the state court judgment were nondischargeable."). "Although there may be an argument against exempting attorney fees from discharge, it [sic] is an actual damage incurred by the plaintiff from the defendant's actions." *Kwiat,* 62 B.R. at 823. Stated another way, legal fees are non-dischargeable where the underlying debt is nondischargeable, and the legal expense arises from the same conduct as the underlying debt. *McGuffey,* 145 B.R. at 597. *See, e.g., In re Orrick,* 51 B.R. 92, 96 (Bankr. N.D.Okla.1985). We find this rationale persuasive, and applicable to the facts of the present case. Marderosian's defalcations caused the litigation with Bay Loan, and American Title now seeks reimbursement for the expense of defending the inevitable action against its insured.

In determining whether the primary debt is nondischargeable, we begin by examining the relevant statute, which states in part: "A discharge under section 727 ... of this title does not discharge an individual debtor from any debt— ... (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4).

■ The term "fiduciary" is more narrowly defined in a bankruptcy context, than in a more general framework, and the "fiduciary relationship referred to in § 523(a)(4) ... [is] limited to express and technical trusts." *In re Cairone,* 12 B.R. 60, 62 (Bankr.D.R.I.1981) (citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934)). The elements of an express trust include: (1) a clear declaration of the creation of a trust; (2) a plainly defined trust res; and (3) the intent to create a trust relationship. *In re Cairone,* 12 B.R. at 62. The trustee's duties must also be independent of any contractual obligation between the parties, and must be in place prior to any claim of misappropriation. *Id.* It is clear that a fiduciary relationship existed under this standard between American Title and Marderosian.

The facts of this case are strikingly similar to those of *In re Goldberg,* 12 B.R. 180 (Bankr.D.N.J.1981), which also involved a title attorney who, upon issuing title insurance policies, failed to exempt from coverage mortgages which encumbered the properties prior to their transfer, *id.* at 182, and then misappropriated funds held by him in an escrow account established for the stated purpose of paying off existing mortgages. *Id.* After making good on the claims arising from the attorney's defalcation, the title company sued the attorney for its losses, *id.,* and the court found that the attorney was a "fiduciary" for the purposes of § 523(a)(4). *Id.* at 183.

■ Based on the evidence here, including Marderosian's frank admissions, the existence of a fiduciary relationship and the fraud/defalcation in this matter are beyond question. Marderosian has admitted that as an agent for American Title and with full knowledge of pre-existing mortgages, he issued "clean" title insurance policies to the purchasers of the properties. He also admitted that the funds entrusted to him by Bay Loan and East West should have been used to pay off and to discharge the outstanding mortgages, with the seller to receive the balance. It is also undisputed that Marderosian knowingly turned over escrow funds to the seller of the properties, who was also his client, leaving the existing mortgages unsatisfied. Finally, it is uncontroverted that from the sale proceeds Marderosian paid himself a "closing fee" of $3,000 for every motel condominium unit sold, for a total of $930,000.

■ Even (arguendo) if fraud did not exist, Marderosian clearly was guilty of defalcation within the meaning of § 523(a)(4). Defalcation by a fiduciary in a bankruptcy context is defined as " 'the failure of one who has received moneys in trust to pay it over as he ought.' " *In re Cairone,* 12 B.R. at 63 (quoting *In re Herbst,* 22 F.Supp. 353, 354 (S.D.N.Y.), *aff'd, Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510 (2d Cir. 1937)). Defalcation has a broader application than fraud, and may cover cases even where the default is innocent. *See In re Cairone,* 12 B.R. at 63. Here, where the fiduciary dispersed loan proceeds to someone other than the prior mortgagee on at least eighty occasions, *innocent mistake* is not even remotely available as a defense.

Marderosian's contention that his failure to obtain and record discharges on the Charlestown and Hillside properties was due to negligence, and not tantamount to a defalcation, is also without merit. In *Cairone*, we noted that defalcation "in a bankruptcy context ... may include innocent default, including all fiduciaries who for any reason were short in their account." *In re Cairone*, 12 B.R. at 63 (citing *Central Hanover Bank & Trust*, 93 F.2d at 511). That Marderosian failed to pay and obtain mortgage discharges, rises *at best* to the level of defalcation, if not fraud, but both (fraud and defalcation) come within the purview of § 523(a)(4).

Marderosian's main argument is premised on a theory that the nondischargeability of a claim for legal fees under § 523(a)(4) rests *solely* on the existence of a state court, prepetition judgment based on either a contractual or statutory provision awarding such attorneys' fees. As previously noted, there are jurisdictions where this argument has been accepted, *see, e.g. In re Cheatham and In re Beard, supra*, but we do not follow that line of cases. Instead, we conclude that American Title is entitled to reimbursement of its legal expenses under its claim for equitable indemnity, and that said claim should survive the bankruptcy, where the primary debt is nondischargeable under § 523(a)(4).

 Finally, Marderosian argues that American Title should be estopped from asserting fraud or defalcation related claims, because of its participation in the negotiation and settlement of claims against Marderosian's malpractice carrier. Specifically, he argues that American Title's present claim, on defalcation grounds, is inconsistent with its prior claim of negligence against Marderosian's malpractice carrier.[4] There is no basis upon which to characterize the liability issues raised in the present case as identical to those asserted against the malpractice carrier. Even if we were inclined to make that leap, estoppel is not applicable or appropriate here. As has been noted earlier herein, de-

falcation is broader than, and may encompass conduct that is far less egregious than fraud. *In re Cairone*, 12 B.R. at 63. Therefore, American Title's prior assertion of negligence against Marderosian's malpractice carrier does not foreclose its present fraud/defalcation argument.

Accordingly, based upon all of the foregoing, we find and conclude: (1) that George A. Marderosian is liable in the amount of $501,960 for the legal services incurred by American Title; and (2) that said debt is nondischargeable, pursuant to 11 U.S.C. § 523(a)(4).

Enter Judgment consistent with this opinion.

---

4. Marderosian also argues that in exchange for his cooperation during the negotiations, American Title promised him a general release of all claims. The evidence offered in support of this contention was the testimony of George Marderosian. In contradiction, Max Wistow, Esq., who was involved in the negotiations, testified that no such release was ever offered. We accept Wistow's version of the facts on this issue, and reject Marderosian's contention that a general release was offered in return for his cooperation.