**In re David ROBERSON, Debtor.**

**SunTrust Bank, Plaintiff,**

v.

**David Roberson, Defendant.**

**Bankruptcy No. 98–40666.
Adversary No. 98–04124A.**

United States Bankruptcy Court,
S.D. Georgia,
Savannah Division.

Feb. 1, 1999.

137

Charles Brett Merrill, Jr., Merrill, Stone & Parks, Swainsboro, Georgia, for Debtor.

Edwin R. Byck, Weiner, Shearouse, Weitz, Greenberg & Shawe, LLP, Savannah, Georgia, for SunTrust.

### MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Complaint To Determine Dischargeability of Debt filed by SunTrust Bank, Savannah, N.A., as assignee and/or successor of Trust Company of Georgia Bank of Savannah, N.A. SunTrust Bank complains the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).[1] This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(I). After considering the pleadings, evidence and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

*Findings of Fact*

In early August, 1993, David Roberson ("Debtor"), an attorney licensed to practice law in the State of Georgia, agreed to act as settlement, closing, and escrow agent for the predecessor of SunTrust Bank, Trust Company of Georgia Bank of Savannah, N.A., ("SunTrust"), in relation to a refinancing of a piece of property owned by Roy L. Allen, II ("Allen"). This relationship was evidenced by a Title Order issued on August 4, 1993 by SunTrust to Debtor stating that he was "authorized to represent and to protect the interests of [SunTrust] in the closing of the . . . mortgage loan." (J. Ex. 1).

---

**1.** SunTrust Bank's complaint originally alleged the debt was nondischargeable pursuant to 11 U.S.C. § 523(a)(6) as well. However, that portion of the complaint was abandoned at trial and, therefore, is not addressed in this opinion.

SunTrust had agreed to loan Allen $150,000.00. Debtor was to receive the $150,000.00 and make the following five disbursements from the proceeds as a pre-condition to closing: 1) $89,634.15 to pay off a first mortgage on the property held by Atlanta Life Insurance Company ("Atlanta Life"); 2) $61,100.00 to pay off an existing unsecured debt owed by Allen; 3) $1,500.00 to pay an origination fee to SunTrust; 4) $400.00 to pay for a survey of the property; and 5) $75.00 to pay for pest inspection of the property.[2] Debtor represented to SunTrust on August 6, 1993 that he would make such disbursements by signing a statement which read, "I have caused or will cause the funds to be disbursed in accordance with this statement." (HUD–1, J. Ex. 3). The loan proceeds were deposited into Allen's trust account. How the money came to be deposited into Allen's trust account rather than Debtor's was not established at trial. There was no evidence that Debtor ever had any control or possession of the proceeds before the deposit was made to Allen's trust account. The deposit check was delivered directly to Allen or someone, other than Debtor, on his behalf. Debtor never notified SunTrust that he did not receive the deposit or that it had been deposited into Allen's trust account. Further, Debtor never inquired with SunTrust as to why the deposit was made to Allen's account, instead seeking assurance from Allen that the funds would be properly disbursed. Subsequently, Allen issued Debtor a check in the amount of $63,075.00 to be used by Debtor to satisfy the existing unsecured debt, the origination fee, the survey, and pest inspection. Debtor never received the $89,634.15 necessary to satisfy the first mortgage held by Atlanta Life. Therefore, Debtor did not pay off Atlanta Life's lien on the property.

SunTrust also required that a title insurance policy be issued in SunTrust's name indicating that the Atlanta Life lien had been canceled. Allen's law partner, Diane M. Morrell, spoke with Charles W. Bell ("Bell"), a Savannah attorney and agent for First American Title Guaranty Fund, Inc., about the requirement that such a policy be issued. Bell issued a title insurance binder indicating that Atlanta Life's lien had been satisfied and that the only lienholder on the property was SunTrust. The reason for this erroneous representation is unclear. Bell testified that he had relied on information provided by Debtor which indicated that Atlanta Life's lien had been satisfied. Debtor disputed Bell's claim saying that he first believed Atlanta Life's lien had been satisfied when he received the title insurance binder containing that assurance. Relying on the representations contained in the binder, without making any inquiry of the real estate records or with Atlanta Life to verify that the lien had been satisfied, Debtor forwarded the binder to SunTrust representing that the lien had, in fact, been satisfied. Upon receiving the title insurance binder, SunTrust believed that it had a first lien on the property and that all of the pre-conditions to the closing had occurred. The title insurance policy was issued and the closing was finalized. To this date, however, SunTrust's lien is second, not first, because Atlanta Life's lien has not been satisfied.

On March 18, 1998, an involuntary bankruptcy petition was filed against Allen. In that case, SunTrust has filed a motion for relief from the automatic stay to sell the property. Because Atlanta Life holds a lien superior to SunTrust, SunTrust will have to pay off the Atlanta Life mortgage of $89,634.15 from any proceeds it receives from foreclosure of the property. SunTrust seeks to recover this amount from Debtor. Debtor filed for relief under Chapter 11 of the Bankruptcy Code on March 3, 1998. SunTrust has asked this Court to determine the $89,634.15 debt is nondischargeable in Debtor's bankruptcy case pursuant to 11 U.S.C. § 523(a)(4) as a debt resulting from fraud or defalcation while Debtor acted in a fiduciary capacity.

*Conclusions of Law*

Although the Bankruptcy Code generally favors discharge of all pre-petition debts, some debts are deemed nondischargeable. 11 U.S.C. § 523(a)(4) excepts from discharge a debt "for fraud or defalcation while

---

**2.** These five disbursements totaled $2,709.15 more than the $150,000.00 provided by Sun- Trust. Debtor was to collect this amount from Allen to fully cover the disbursements.

acting in a fiduciary capacity." Three elements must be satisfied in order for a debt to be declared nondischargeable under section 523(a)(4): 1) the debtor must have stood in a fiduciary capacity toward the creditor challenging discharge of the debt; 2) the fiduciary relationship must have existed prior to the creation of the debt; and 3) the debt must have resulted from some act of fraud or defalcation by the debtor. *Quaif v. Johnson*, 4 F.3d 950, 953–55 (11th Cir.1993). SunTrust, as the party challenging the dischargeability of this debt, bears the burden of proving each of these elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 288, 111 S.Ct. 654, 660, 112 L.Ed.2d 755 (1991).

SunTrust argues that the first element is satisfied in one of two ways—either 1) Debtor was acting in a fiduciary capacity toward SunTrust in his capacity as its closing attorney, or 2) the Title Order presented to Debtor on August 4, 1993 created a fiduciary relationship by its terms defining certain duties owed to SunTrust by Debtor as their settlement, closing, and escrow agent during the closing. SunTrust further argues that both of these relationships existed prior to the creation of the debt resulting from Debtor's failure to properly distribute the funds on August 6, 1993, such that one or both relationships satisfy the second element.

The nature of the relationship necessary to satisfy Congress's use of the term, "fiduciary capacity," in section 523(a)(4) is far from settled. The United States Supreme Court's attempt to define the term did little to fix its meaning. The Court's last attempt came in 1934 in an opinion written by Justice Cardozo, *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934) (construing section 17(a)(4) of the Bankruptcy Act of 1898, which read, "A discharge in bankruptcy shall release the bankrupt from all of his provable debts, except such as . . . were created by his fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity"). In *Davis*, Justice Cardozo declared, "the statute 'speaks of technical trusts, and not those which the law implies from the contract.'" *Id.* at 333, 55 S.Ct. 151. (quoting *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844)). He went on to say, "it is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have been a trustee before the wrong and without reference thereto." *Id.* From these words, courts have reached a consensus that fiduciary capacity for purposes of section 523(a)(4) does not apply to the fiduciary relationship resulting from remedial trusts, such as resulting and constructive trusts, because such a relationship is imposed by courts as a result of the creation of the debt, thus failing the requirement that the relationship preexist the creation of the debt. *E.g. Quaif*, 4 F.3d at 953. Courts have been left to struggle with what types of relationships do fall within Cardozo's term, "technical trusts." *Compare Quaif*, 4 F.3d at 953–954 (interpreting technical trusts to apply only to express or statutory trusts), *with In re Marchiando*, 13 F.3d 1111, 1115–16 (7th Cir.1994) (interpreting technical trusts to apply to those fiduciary relationships where the fiduciary has greater knowledge or power than the principal, and criticizing *Quaif* for having extended the term to include statutory trusts).

■ Fortunately, this case does not require this Court to weigh into that debate. The Court finds that even assuming arguendo that Debtor was acting in a fiduciary capacity, SunTrust has failed to meet its burden with regard to the third element. That is, the Court finds as a matter of law that Debtor committed neither fraud nor defalcation during the course of his representation of SunTrust.

### *Fraud*

■ The term, "fraud," as used in section 523(a)(4) refers to frauds of the debtor "involving moral turpitude or intentional wrong, and does not extend to fraud implied in law which may arise in the absence of bad faith or immorality." *Discount Home Ctr., Inc. v. Turner (In re Turner)*, 134 B.R. 646, 657 (Bankr.N.D.Okla.1991). SunTrust urges the Court to find fraud in its allegation that Debtor knew the first lien had not been

satisfied, and yet represented to SunTrust that the lien had been satisfied. While it is true that Debtor falsely represented to Sun-Trust that Atlanta Life's lien had been satisfied, when, in fact, it had not, there was no evidence that Debtor actually knew this representation was untrue. Instead, the evidence points to the conclusion that Debtor did not confirm whether the lien had actually been paid off or not. The evidence does not suggest that Debtor was purposefully unaware of this detail, but that Debtor did not properly and diligently discharge his duties as the closing attorney/agent for SunTrust in failing to make necessary inquiries to determine that the lien had been satisfied, instead choosing to rely on the assurances of Allen and the statements contained in the title insurance binder. While Debtor's conduct was grossly negligent, it did not invoke any "moral turpitude," "intentional wrong," "bad faith," or "immorality." To decide otherwise would reduce the standard to one which would have to differentiate among varying degrees of negligence. While gross negligence is sometimes deemed to be an intentional act, it lacks the scienter commonly associated with the term, "fraud." Therefore, SunTrust's claim that the debt is nondischargeable because it resulted from fraud while Debtor was acting in a fiduciary capacity must fail. Next, the Court will consider whether Debtor's breach of his duties as closing attorney/agent for SunTrust rises to the level of defalcation.

### *Defalcation*

■ The term, "defalcation," as used in section 523(a)(4) has been defined by the Eleventh Circuit Court of Appeals as "a failure to produce funds entrusted to a fiduciary." *Quaif,* 4 F.3d at 955. SunTrust argues that, even though Debtor never received the loan proceeds, his lack of care in failing to ensure that the funds were properly disbursed constituted defalcation. Debtor, on the other hand, argued that physical possession of the funds is a necessary element of defalcation, and therefore, SunTrust's claim must fail. A review of the case law shows a consensus among the courts that defalcation requires, at the least, entrustment of the plaintiff's money or property to the debtor.

*See Tudor Oaks Ltd. Partnership v. Cochrane (In re Cochrane),* 124 F.3d 978, 984 (8th Cir.1997) (requiring failure to account fully for money received), *cert. denied,* —— U.S. ——, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998); *Livingston v. Zurich Ins. Co. (In re Livingston),* 40 B.R. 1018, 1019 (E.D.Mich.1984) (stating elements of defalcation include "[m]oney belonging to plaintiff coming into the hands of the debtor"); *Clark v. Allen (In re Allen),* 206 B.R. 602, 608 (Bankr.M.D.Fla. 1997) (requiring failure to account for money or property entrusted to debtor); *American Title Ins. Co. v. Marderosian (In re Marderosian),* 186 B.R. 341, 346 (Bankr.D.R.I.1995) (requiring failure to pay over money received); *Hoff v. Carroll (In re Carroll),* 140 B.R. 313, 316 (Bankr.D.Mass.1992) (requiring failure to account for money or property held in a fiduciary capacity). *But see Brawer v. Gelman (In re Gelman),* 47 B.R. 735, 738 (Bankr.S.D.Fla.1985) (finding defalcation where debtor was entrusted only with plaintiff's cause of action).

■ SunTrust's claim fails because it never entrusted Debtor with the $150,000.00. Entrust means, "to charge with a responsibility." NEW WEBSTER'S DICTIONARY 134 (1992). Debtor was never in a position to control the $150,000.00. While Debtor signed a statement wherein he represented that he would cause the disbursements to be made, Sun-Trust never gave him the means necessary to carry out that assurance. Rather than having exclusive control and responsibility for the $150,000.00 fund, Debtor was left to rely on assurances from Allen that the funds would be properly disbursed. Debtor failed to protect SunTrust by requiring proof of the disbursements by Allen. Debtor failed to inquire with SunTrust about whether it intended to cause the funds to be deposited in Allen's account. He also failed to inquire with Atlanta Life about whether the lien had actually been satisfied and failed to check the real estate records for proof of cancellation of the Atlanta Life mortgage. Debtor breached his fiduciary obligation to SunTrust. But a mere breach of a fiduciary obligation does not in itself constitute defalcation.

Authority for SunTrust's position is cited earlier—*Brawer v. Gelman (In re Gelman),*

47 B.R. 735, 738 (Bankr.S.D.Fla.1985). In that case, the "property" entrusted to the fiduciary was a cause of action which was supposed to be asserted by the fiduciary (attorney) in a lawsuit. Failing to file the lawsuit caused the property to become worthless. Arguably, the "property" in this case is the right to receive a first mortgage in exchange for the $150,000.00 loan. If Debtor had been in a position to ensure that this result would occur, perhaps this analysis would follow a different path. But, unlike the attorney in *Brawer*, Debtor had to rely on someone else to accomplish the intended result. While he should have been more diligent to that end, the "entrustment" to him was not sufficiently complete as to hold him solely responsible for the loss. There is no way to conclude with certainty that the loss could have been avoided by Debtor's diligence. If Allen had dissipated the funds allocated to pay the Atlanta Life mortgage as soon as they were received, Debtor would have been powerless to assist SunTrust.

These facts point to the conclusion that an entrustment never occurred. As a result, SunTrust's claim that this debt is nondischargeable because it resulted from defalcation while Debtor was acting in a fiduciary capacity must fail.[3]

An order in accordance with this opinion will be entered on this date.

### ORDER

In accordance with the memorandum opinion entered on this date, it is hereby

ORDERED that SunTrust's claim that David Roberson's debt is excepted from discharge by 11 U.S.C. § 523(a)(4) is DENIED.

---

**3.** The Court does not, in this case, decide how egregious debtors' breach of their fiduciary duties must be in order to constitute defalcation. In *Quaif*, the Eleventh Circuit recognized that some courts require more than an innocent mistake, while some courts find defalcation in even the purely innocent debtor. The Eleventh Circuit, however, never decided which standard was appropriate. 4 F.3d at 955. Because the Court finds no entrustment here, this is not the appropriate case for this Court to decide which standard it will apply.